## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

M.G.U, *et al.*                                        )
                                                       )
                                                       )
          Plaintiff,                )          No. 1:18-cv-01458 (PLF)
                                                       )
v.                                                     )
                                                       )
Kirstjen Nielsen, *et al.,*                            )
                                                       )
          Defendants.               )
                                                       )
_____ )

### DEFENDANTS' STATUS REPORT

       Defendants, by and through their undersigned counsel, respectfully submit the following

report on the status of the matters addressed at the hearing on July 12, 2018.

1.  An asylum officer found Plaintiff E.F. did not have a credible fear of return to

    Guatemala. On July 12, 2018, after a review of the negative credible fear finding,

    the Immigration Judge affirmed the asylum officer's determination. Plaintiff E.F.

    is subject to a final order of removal.

2.  Defendant Immigration and Customs Enforcement (ICE) has agreed to voluntarily

    stay Plaintiff E.F.'s removal for five (5) days, until July 17, 2018.

3.  Per the court's request, attached hereto as Defendants' Exhibits 1-6, are the

    recent filings in *Ms. L., et al. v. ICE, et al.*, Case No. 18-cv-0428 (S.D. Cal.).

//

//

DATE: July 13, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

WILLIAM C. SILVIS
Assistant Director

SARAH B. FABIAN
Senior Litigation Counsel


By:   Nicole N. Murley
      Trial Attorney
      U.S. Department of Justice
      Office of Immigration Litigation
      District Court Section
      Box 868, Ben Franklin Station
      Washington, DC 20442
      Telephone: (202) 616-0473
      Fax: (202) 616-8962
      E-mail: Nicole.Murley@usdoj.gov

        and

      JESSIE K. LIU, D.C. Bar #472845
      United States Attorney
      DANIEL F. VAN HORN
      D.C. BAR # 924092
      Civil Chief

      JEREMY S. SIMON, D.C. BAR #447956
      Assistant United States Attorney
      555 4th Street, N.W.
      Washington, D.C. 20530
      (202) 252-2528
      Jeremy.simon@usdoj.gov

      *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2018, I served the foregoing status report on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.


/s/ Nicole N. Murley
NICOLE N. MURLEY
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

*Attorney for Respondents*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

M.G.U., *et al.*,

|                                        |                             |
|                      Plaintiffs,       | Case No. 1:18-cv-01458(PLF) |
|                      v.                |                             |
| Kirstjen Nielsen, *et al.*,            |                             |
|                      Defendants.       |                             |

# INDEX OF EXHIBITS

1        Dkt. 95, Order Following Status Conference, *Ms. L v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 9, 2018)

2        Dkt. 96, Joint Status Report Regarding Process for Release of UACs, *Ms. L v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 9, 2018)

3        Dkt. 97, Joint Status Report Regarding Notice to Class Members, *Ms. L v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 9, 2018)

4        Dkt. 99, Joint Status Report Regarding Reunification, *Ms. L v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 10, 2018)

5        Dkt. 101, Order Following Status Conference, *Ms. L v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 10, 2018)

6        Dkt. 104, Joint Status Report Regarding Reunification, *Ms. L v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 12, 2018)

# DEFENDANTS' EXHIBIT 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ms. L.; et al.,<br><br>        Petitioners-Plaintiffs,<br><br>v.<br><br>U.S Immigration and Customs Enforcement ("ICE"); et al.,<br><br>        Respondents-Defendants. | Case No.:  18cv0428 DMS (MDD)<br><br>**ORDER FOLLOWING STATUS CONFERENCE** |

A status conference was held on July 9, 2018.  Lee Gelernt appeared and argued for Plaintiffs and Sarah Fabian appeared and argued for Defendants.  After consulting with counsel and being advised of the status of the case, IT IS HEREBY ORDERED:

1.    On or before **6:00 p.m.** on **July 9, 2018**, counsel shall submit the following documents to the Court:

    a.    A joint status report on the issue of the procedures to be followed for the reunification of children and Class Members who have been released from ICE custody.  To the extent counsel have agreed on the procedures, they should submit a joint motion and proposed order for the Court's review.  To the extent there is disagreement, each side should set out its respective proposal and specify the disagreements that require court resolution

1

b.     A proposed notice to be provided to the Class.

2.     On or before **10:00 a.m.** on **July 10, 2018**, counsel shall submit a joint status report setting forth how many Class Members have been or will be reunited with their children by the court-imposed deadline, and how many Class Members may not be reunited with their children by the court-imposed deadline due to legitimate logistical impediments that render timely compliance impossible or excusable, *e.g.*, detention of the Class Member in criminal custody or removal of the Class Member from the United States.  For the latter group, counsel should explain why reunification may not be completed, and provide a timeframe for those reunifications.

3.     A further status conference shall be held at **11:00 a.m.** on **July 10, 2018**.

4.     The Court has set up a dial in number for counsel and any members of the news media that wish to attend.  ***This number is for counsel and media only***, who should follow the steps below to connect to the conference call. Members of the general public may appear in person.

1.     Dial the toll free number: **877-873-8018**;

2.     Enter the Access Code: **9911153** (Participants will be put on hold until the Court activates the conference call);

3.     Enter the Participant Security Code **07100428** and Press # (The security code will be confirmed);

4.     Once the Security Code is confirmed, participants will be prompted to Press 1 to join the conference or Press 2 to re-enter the Security Code.

Dated:  July 9, 2018

Hon. Dana M. Sabraw
United States District Judge

18cv0428 DMS (MDD)

# DEFENDANTS' EXHIBIT 2

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T: (212) 549-2660
F: (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

        Petitioners-Plaintiffs,

    vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

        Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT REGARDING SUITABILITY PROCESS FOR RELEASE OF UAC TO POTENTIAL PLAINTIFFS IN THE GENERAL PUBLIC**

## I.    JOINT STATUS REPORT

On July 9, 2018, this Court instructed the parties to confer on the processes bearing on the reunification of class members with their children. The parties submit this joint status report in compliance with the Court's instruction. In areas where the parties disagree, the federal government requests clear guidance from the Court on those steps that must be taken prior to reunification so that it can comply with the Court's order on timing consistent with its statutory and regulatory obligations under existing law. Each of these actions will affect the speed with which the government can reunify families. The actions concern the following:

- First, may HHS conduct DNA testing in every case to confirm each parent-child relationship?

18cv428 DMS MDD

- Second, must HHS use only information already obtained prior to the reunification deadlines to determine if the parent will put the child at an imminent risk of danger, abuse, or neglect?

- Third, may HHS run fingerprint background checks on unrelated adults in the anticipated domicile of the child, before placing a child with a released parent?

- Fourth, may HHS require released parents to submit proof of address and a sponsor care plan?

- Fifth, may HHS require released parents to sign a Sponsor Care Agreement and attend legal orientation trainings?

- Sixth, must HHS reunify children who are themselves determined to present a danger?

## II.    ISSUES ON WHICH THE PARTIES AGREE

### 1.    Vetting Parent-Child Relationships

The parties agree that the federal government may screen a putative class members to confirm that he or she is, in fact, the parent of the child(ren) with whom he or she seeks to reunify. The parties also agree that when HHS conducts DNA testing to verify parentage, the federal government will not use the DNA samples or test results for any purpose besides verifying parentage, and will ensure that the DNA samples and test results are destroyed afterwards. The parties have

not been able to agree on whether HHS can use DNA testing in every case concurrent with other methods of verifying parentage to try to complete the verification process within the court's deadlines.

### 2.	Background Checks on Purported Parents

The parties agree HHS may conduct fingerprint background checks on potential class members while parentage is being verified, to ensure that the person is actually a class member without pertinent criminal history as set forth in the Court's class definition, and to ensure that the parent is neither unfit nor presents a danger to the child presenting an obstacle to release. The parties further agree that HHS will in all possible cases use information already obtained by ICE when it collected the fingerprints of the potential class members and ran checks on them. HHS cannot, however, exclude the possibility that in a small number of cases HHS will need to collect potential class members' fingerprints again to run the checks necessary to ensure child safety and sponsor suitability. HHS believes that fingerprinting may be appropriate in some situations to ensure child welfare where there are objective indications of child endangerment.

### 3.  Home Studies

The parties agree that HHS will conduct home studies for purposes of reunification only when required by the TVPRA. The TVPRA states that home studies:

18cv428 DMS MDD

shall be conducted for a child who is a victim of a severe form of trafficking in persons, a special needs child with a disability (as defined in section 12102 of title 42), a child who has been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened, or a child whose proposed sponsor clearly presents a risk of abuse, maltreatment, exploitation, or trafficking to the child based on all available objective evidence.

8 U.S.C. § 1232(c)(3)(B).

## III.    ISSUES ON WHICH THE PARTIES DISAGREE

### A. **Plaintiffs' Position**

The crux of Plaintiffs' position is that the Government should not be allowed to delay reunification to conduct procedures that would not have been used if the child had not been forcibly taken from the parent. If a Class Member parent and child had showed up at the border together, and had *not* been separated, then the parent would not be required to undergo the extensive procedures proposed by the Government to maintain custody of the child.

Plaintiffs thus believe that streamlined procedures are appropriate and lawful in this unique context. The TVPRA, by its terms, does not mandate any particular procedures for reunification, except for a small subset of cases where home studies are required because there have been, inter alia, indications of abuse or trafficking. 8 U.S.C. 1232(c)(3)(B). There are also no regulations that ORR has promulgated pursuant to the TVPRA that address reunification procedures. The Government, however, as a matter of policy has created procedures for vetting sponsors (the

"normal" reunification process). The Court need not, however, decide whether these normal reunification procedures are required by the TVPRA. Even assuming that these procedures are required by the TVPRA for certain children who come to the United States without their parents, the TVPRA plainly does not preclude the use of streamlined procedures in this unique context, where the Government has forcibly taken children from their parents and is simply being asked to return children to their parents.

Indeed, the purpose of the TVPRA is to promote the best interests of the child and to reunite families. Delayed reunification, especially for babies and toddlers, is not in the best interests of the child.

In short, there is nothing in the language or purpose of the TVPRA that precludes this Court from ordering that in this unique context, and only for purposes of this case, the Government use the streamlined procedures suggested by Plaintiffs. The procedures that Plaintiffs are proposing—parental verification and pursuing any red flags known to the Government at the time of the reunification deadline—are entirely consistent with the TVPRA.[1]

### 1. DNA Vetting of All Families.

---

[1] Plaintiffs' position that streamlined procedures are both appropriate and lawful in this unique context, and not precluded by the TVPRA, is supported by the Women's Refugee Commission and Kids in Need of Defense ("KIND"), who have years of experience working with unaccompanied children and the reunification process. They will be submitting a declaration in conjunction with this filing, and have both previously filed declarations in this case.

Plaintiffs' position with respect specifically to DNA testing is that the Government should use DNA testing to verify parentage only where necessary, meaning that there is no other reliable documentary, testimonial, or other evidence of parentage. That way no further delays in reunification will occur as a result of the need to DNA test every family. Had the families not been separated, they would not routinely have been subjected to DNA testing.[2]

In addition to any delays caused by DNA testing of every class member, the Class Members and their children also have powerful interests in the privacy of their DNA information. As the Ninth Circuit has said, "[o]ne can think of few subject areas more personal and more likely to implicate privacy interests than that of one's health or genetic make-up." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998).

The circumstances of this case also render it inherently coercive for the Government to require parents to submit to DNA testing to get back the children that were unlawfully taken from them. Parents should not have to sacrifice their privacy rights, and face the risk of having their DNA information collected in a Government database, to be reunified with their children. Moreover, the

---

[2] The Government states that three individuals were identified as non-parents during the HHS verification process, but does not state that DNA testing was the basis for that determination, and in fact notes that the adults actually told the Government they were not the parents.

Government proposes routine DNA testing of young children, some of whom are mere weeks or months old.

If, however, the Court concludes that the Government may use DNA testing of parents and children to effectuate the injunction, at the absolute minimum the Court should order the Government to:

(1)  exhaust first all other means of establishing or verifying parent-child relationships, including through the use of techniques commonly used by U.S. courts to determine family relationship—including official documents, representations from a witness, parent, and/or child, and/or observation of behaviors of the adult and child toward each other;

(2) only conduct a DNA test on those adults who have agreed to undergo a test;

(3) to ensure that all samples and data collected are not shared with any other federal agency outside of HHS and that all such samples, data, and any results are destroyed upon completion of the required matching tests and, in any event within 7 days.

(4) To the extent that the Government employs outside contractors or medical providers to conduct the DNA tests, such contractors must also be forbidden from retaining any results and test samples and must destroy them within seven days of producing a testing result. This will prevent the Government from maintaining a database of samples and will ensure that any results are

7

not used for any purposes other than facilitating reunification pursuant to the Court's injunction.

Finally, the Court should also make clear that the lack of a DNA match is not conclusive proof of the lack of a parent-child relationship, in recognition that many parents are not the biological parents of their children. For example, some parents may not be aware that they have no biological relationship to their child in cases of undisclosed rape or adultery.

### 2. Restrictions on HHS Information Gathering and Decision Making about Child Welfare

Plaintiffs' position is that if the Government becomes aware of evidence *prior to the reunification deadline* that the parent is abusive, neglectful, or otherwise poses a risk of danger to the child, Plaintiffs have no objection to the Government taking additional time to verify the fitness of the parent before releasing the child to his or her custody. For example, as set forth above, Plaintiffs have no objection to the Government using information obtained from already-performed fingerprint and background checks on Class Members to evaluate parental fitness. In addition, if ORR workers have spoken with the child during the child's custody and learned information that calls the parent's fitness into question, that could be a basis to delay reunification. What Plaintiffs object to is permitting the Government to drag out the reunification process by imposing procedures or conducting additional investigation that is not required by statute.

8

Plaintiffs acknowledge that any evaluation of parental fitness must rely to some extent on "professional judgment." But in the context of this case, and in light of constitutional standards governing the separation of children from their parents, that judgment must be based on actual, verifiable *facts* – not the untested and subjective opinions of unknown Government case workers. Given that the Government has already forcibly separated Class Members from their children, it should be subjected to a rigorous burden to justify maintaining that separation. The government should not be permitted to delay reunification any longer to conduct a background check that would not have occurred had the parents not been separated from their children. (Criminal background checks would of course already have been done at the time of apprehension when the parent was initially fingerprinted.)

### 3. Background Checks on Other Adults in the Household

Nothing in the TVPRA requires the Government to conduct background checks of nonparent adults in the household, or alternate care givers, before releasing a child from ORR custody. And the Government cites no applicable statutory provision that so requires. Nor does the *Flores* Agreement contain any language demanding that the agencies fingerprint and run checks on individuals who live in the parent's household.

Requiring these background checks will impose needless delay on the process by requiring household members to submit to checks. Moreover, DHS has recently revised its regulations to allow information it collects from ORR during the sponsor reunification process, including background checks of household members, for the purposes of conducting immigration enforcement activities. As a result, those household members may rightfully have concerns about sharing information with DHS in light of its stated intent to use that information to come after them.

In sum, nothing in the statute requires background checks of other adults or alternate care givers, and it will only add further needless delay to this process. If the Government had *not* separated Class Members from their children, they would not have been required to undergo any of these procedures prior to obtaining release. There is no reason to make them go through those processes here. [3]

### 4. Proof of Address, Sponsor Care Plans and Alternate Care Givers

Plaintiffs do not object to Class Members submitting a proof of address of where they will live with the child. But Plaintiffs object to any requirement that the Plaintiff provide a "sponsor care plan" or identify alternate care givers prior to

---

[3] Indeed, the government itself recognizes that this procedure is not required. They are currently planning on reuniting parents and children tomorrow without conducting background checks on all household members, even assuming the Class Member knows at this point where she will be living and with whom.

10

18cv428 DMS MDD

obtaining release of their children. Reunification should not be delayed because of these unnecessary procedures.

The key here is in the first sentence of the Government's position—"in the *ordinary* operation of the UAC program." Nothing about this particular context is "ordinary," and the Government is wrong to apply procedures that were developed for an entirely separate context to this one.

The Government cites Section 1232(c)(3)(A), but that statute merely requires ORR to make a "determination" that the proposed custodian is capable of caring for the child. The statute does not compel that "determination" to be made in a certain way, much less that this determination must take the same form in all cases. Thus, there is nothing in the statute that precludes the Government from adopting, in the unique circumstances of this case, streamlined procedures to return separated children to their parents' care.

The Government wants parents—whose children were unlawfully taken from them—to fill out long paper applications and identify other caregivers for them before it returns their children. The TVPRA was not intended to inhibit family reunification—in fact, just the opposite. The Government cannot use it as a sword to prohibit or delay reunification by throwing up such needless bureaucratic roadblocks.

### 5. Legal Orientation and Sponsor Care Agreement

Plaintiffs do not object to requesting Class Members to attend legal orientation programs or sign "sponsor care agreements" that are consistent with the requirements set forth in Plaintiffs' positions above, so long as reunification by the Court's deadlines is not made contingent on fulfilling those conditions. For example, there is no reason why Class Members cannot sign streamlined sponsor care agreements as the child is released to their care pursuant to the Court's deadlines. In addition, Class Members can attend legal orientation programs after reuniting with their children. But reunification of children should not be delayed past the Court's deadlines by requiring attendance at a legal orientation program or the signing of a sponsor care agreement.[4]

### 6. Children Presenting a Danger

Plaintiffs respectfully request additional time to respond to this point, unless the Government represents that there are children under five years old who fall into this category and present risks to the safety of themselves or others.

### B. Defendants' Positions

### 1. Vetting Parent-Child Relationships

Despite the points of agreement noted above on this issue, the parties have not been able to agree on the necessity of using DNA testing overall. In particular,

---

[4] Plaintiffs note, however, that if the parents had never been separated from their children, they would not have to sign sponsor care agreements or attend legal orientation program to maintain custody of their children.

18cv428 DMS MDD

HHS believes that, to reliably verify parentage and to do so within or close to the Court's deadlines, HHS must be able to use DNA testing generally to determine parentage.

Sound verification of parentage is critical. HHS is charged with faithfully implementing the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA). To do so, HHS must be sure in all cases that a putative class member is a child's parent, including through DNA testing, before it forever releases the child to the custody and care of that person. As HHS stated previously, ORR's experience is that children are smuggled across the border or trafficked by adults who fraudulently or inaccurately hold themselves out as parents. *See* White Dec. ¶ 25. Consistent with that experience, HHS reports that it found that three putative class members seeking release of children aged 0–4 were not the parents of the children. Indeed, some of the putative class members admitted as much during HHS's verification-of-parentage process.

To verify parentage of a potential sponsor claiming to be a parent, HHS commonly uses overlapping methods of comparing documents submitted by the sponsor, consulting with the consulate of the home country, interviewing the prospective sponsor and child, and obtaining results from DNA tests. To more quickly implement the Court's order, HHS has coordinated between its staff, its grantees, and ICE, to obtain DNA test results on all the possible plaintiffs and

children through cheek swabs. HHS is simultaneously checking documents and conducting interviews, but many potential plaintiffs do not have adequate documentation, and HHS does not control how fast other countries' consulates will provide documentation. The normal length of stay of a UAC in HHS custody before release is 28 days, which is almost twice as long as the time the Court has given HHS to complete reunifications with some class members.

In short, HHS does not believe that it can both expedite its processes and ensure parentage if it foregoes the use of DNA testing to help verify parentage. Nor would it be a good use of agency resources for HHS to spend more hours per case reviewing documents only to find that DNA tests are ultimately required to resolve questions arising from poor documentation. HHS thus respectfully submits that Plaintiffs' restriction of "necessity" does not promote the aims of the Court's order.

## 2. Restrictions on HHS Information Gathering and Decision Making about Child Welfare

HHS believes that it is important for the Court to permit it to evaluate all reasonably available and relevant information to allow HHS to make sound judgments about child welfare.

It would therefore be a mistake, in HHS's view, to adopt Plaintiffs' proposed limitation on the information that HHS can consider only evidence that it obtains prior to the reunification deadline. This restriction could endanger children welfare by preventing HHS from considering information material to assessing parental

fitness. As discussed below, HHS may need additional information from prospective sponsors to ensure child safety and sponsor suitability, and HHS believes this to be the case even where the prospective sponsor is a parent. HHS should not be prevented from obtaining this information simply because a reunification deadline has passed.

HHS also does not believe that the Court should adopt the restriction that it must release the UAC unless its finding of child endangerment is based on "actual, verifiable facts." The test is attractive in formulation, but unworkable given the critical calls of professional judgment that HHS must make in promoting child safety and wellbeing. The test that Congress chose for HHS is the interests of the child. 6 U.S.C. § 279(b)(1)(B). HHS determines what is in the interests of the child based on common forms of information used in child welfare contexts, including interviews and assessments of children by ORR and clinicians, interviews by ORR of relatives and friends, documents, background checks, and information presented by the prospective sponsor. These determinations necessarily rest on sound professional judgment, and do not lend themselves to easy review by wooden resort to "actual, verifiable" information. HHS believes that the better approach is for HHS to make informed decisions about an individual child's interest, and for Plaintiffs to petition this Court if they believe HHS has denied a release on grounds that do not actually show danger to that child. This would accommodate the

18cv428 DMS MDD

competing interests—and would provide a critical safety valve for the affected children.

### 3. Background Checks on Other Adults in the Household

In the interests of child welfare, HHS believes that the Court should allow for sound background checks of non-sponsor adults with whom a UAC may be released to live. HHS has implemented the TVPRA by requiring background checks—including fingerprinting of other adults in the household and alternate care givers where a sponsor parent will take a UAC to live. The importance of background checks was borne out in the past week, during HHS' screening of potential class members for reunification of the separated children aged 0–4. HHS reports that the checks showed three parents with criminal histories involving human smuggling, child cruelty and narcotics convictions, and alleged murder, respectively. When a parent plans to house a child with one or more other adults, who might not even be relatives, those adults are no less likely to have significant criminal histories.

Plaintiffs ask the Court to require HHS to release children directly into such a situation without first running fingerprint background checks on those adults. HHS submits that this would needlessly risk these children's safety and wellbeing. The Flores Settlement Agreement (see paragraphs 14–18) has long authorized the government to conduct safety and suitability assessments before releasing UACs to

18cv428 DMS MDD

parents in the general public who seek sponsorship. Legislating on this background, the TVPRA requires HHS "to ensure that unaccompanied alien children in the United States are protected from traffickers and other persons seeking to victimize or otherwise engage such children in criminal, harmful, or exploitative activity," and to "make[] a determination that the proposed custodian is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(1) & (c)(3)(A). The TVPRA in turn requires HHS to "establish policies … to ensure" these child safety measures are satisfied. *Id.* at 1232(c)(1). HHS has established those policies in ORR's UAC Policy Guide, "Children Entering the United States Unaccompanied, Section 2: Safe and Timely Release from ORR Care."[5] The guide requires "[p]roof of identify of adult household members and adult care givers identified in a sponsor care plan." *Id.* "In order to ensure the safety of an unaccompanied alien child and consistent with the statutory requirements under the TVPRA, ORR requires a background check of all potential sponsors and household members. The background check takes place as soon as the potential sponsor and adult household members have completed the Authorization for Release of Information form, submitted fingerprints, and provided a copy of a valid government issued photo identification." *Id.* HHS has

---

[5] Available at https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-2#2.1

18cv428 DMS MDD

conducted background checks of adult household members since January 2016, when the Senate Committee on Homeland Security and Government Affairs, Permanent Subcommittee on Investigations, majority and minority staff report, concluded that failing to require background checks on non-sponsor adult household members or on backup sponsors led to child abuse and exploitation, including when the sponsor was a parent.[6]

For these reasons, HHS respectfully submits that the Court should permit HHS to continue to require background checks of other household adults where the released parent will take the UAC to live.

### 4. Proof of Address, Sponsor Care Plans and Alternate Care Givers

HHS believes that the Court should, in accordance with the ordinary operation of the UAC program, permit HHS to require released sponsor parents to submit proof of address and a sponsor care plan. Consistent with the statutory requirement that "the proposed custodian [be] capable of providing for the child's physical and mental well-being," 8 U.S.C. § 1232(c)(3), proof of address and a sponsor care plan ensures the child will not be homeless or live in harmful

---

[6] Available at
https://www.hsgac.senate.gov/imo/media/doc/Majority%20&%20Minority%20Staff%20Report%20-%20Protecting%20Unaccompanied%20Alien%20Children%20from%20Trafficking%20and%20Other%20Abuses%202016-01-282.pdf

18cv428 DMS MDD

conditions (it is easy to imagine many such conditions). And because class members are likely to be without immigration status at this time, the sponsor care plan is particularly appropriate so the parent would identify an alternate care giver in the event that the parent, but not the child, is removed or deported. Fingerprints and background checks are also required for those alternate care givers. HHS understands that Plaintiffs' proposal would preclude these child safety measures. This would be a mistake.

### 5. Legal Orientation and Sponsor Care Agreement

The TVPRA declares that before release of a UAC to a sponsor in the general public, "[t]he Secretary of Health and Human Services shall cooperate with the Executive Office for Immigration Review to ensure that custodians receive legal orientation presentations provided through the Legal Orientation Program administered by the Executive Office for Immigration Review." 8 U.S.C. § 1232(c)(4). The Homeland Security Act of 2002 requires that before HHS releases a UAC, it "shall … ensure" that UACs "(i) are likely to appear for all hearings or proceedings in which they are involved; (ii) are protected from smugglers, traffickers, or others who might seek to victimize or otherwise engage them in criminal, harmful, or exploitive activity; and (iii) are placed in a setting in which they are not likely to pose a danger to themselves or others." 6 U.S.C. § 279(b)(2). HHS's policy guide thus requires sponsors—including verified

18cv428 DMS MDD

parents—to sign a sponsor care agreement to ensure UAC attend their immigration and other proceedings and follow certain guidance in case the UAC runs away or an emergency occurs. These statutory requirements are important—including for released class members—and so should be retained here.

### 6. Children Presenting a Danger

The parties disagree on whether HHS may decline to release a UAC to a class member based on danger presented by the UAC to himself or herself. HHS believes that it should retain its ability to protect children and the community in these circumstances.

Since before the Flores Settlement Agreement, the government has held a small percentage of UACs in secure custody because of the UAC's own history demonstrating they present a risk to the safety of themselves or others. In reviewing the files of separated children over age five, HHS has identified children with serious issues that would support a finding of dangerousness for that child. Under cases implementing the Flores Settlement Agreement, any UAC in secure custody with ORR is entitled to a bond hearing with an administrative law judge, if the UAC contends that he or she is not a danger and should not be held in secure custody.

HHS's position is that if a UAC is in secure custody, and has not asked for a bond hearing, or has had a bond hearing and lost the right to leave secure custody,

then that child is properly detained. And the government does not have facilities for detaining children who are security risks together with their parents. HHS submits that it would be a particular mistake to order HHS to release such a UAC into the general public when the UAC is already being provided with a bond hearing on that issue under the implementation of the Flores Settlement Agreement.

1   DATED: July 9, 2018        Respectfully submitted,

2

3                              /s/ Lee Gelernt

Lee Gelernt*

4                            Judy Rabinovitz*

Anand Balakrishnan*

5                            AMERICAN CIVIL LIBERTIES UNION

6                            FOUNDATION

125 Broad St., 18th Floor

7                            New York, NY 10004

8                            T:  (212) 549-2660

F:  (212) 549-2654

9                            *lgelernt@aclu.org*

10                           *jrabinovitz@aclu.org*

*abalakrishnan@aclu.org*

11

12                           Bardis Vakili (SBN 247783)

13                           ACLU FOUNDATION OF SAN DIEGO

& IMPERIAL COUNTIES

14                           P.O. Box 87131

15                           San Diego, CA 92138-7131

T: (619) 398-4485

16                           F: (619) 232-0036

17                           *bvakili@aclusandiego.org*

18                           Stephen B. Kang (SBN 292280)

Spencer E. Amdur (SBN 320069)

19                           AMERICAN CIVIL LIBERTIES UNION

20                           FOUNDATION

39 Drumm Street

21                           San Francisco, CA 94111

22                           T:  (415) 343-1198

F:  (415) 395-0950

23                           *skang@aclu.org*

24                           *samdur@aclu.org*

25

26                           *Attorneys for Petitioners-Plaintiffs*

                                    *\*Admitted Pro Hac Vice*

27

28

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

# DEFENDANTS' EXHIBIT 3

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

Petitioners-Plaintiffs,

vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT
REGARDING NOTICE TO CLASS
MEMBERS**

On July 9, 2018, the Court held a status conference with the parties. At that status conference the parties submitted that they would jointly submit to the Court their proposal regarding class notice. The parties hereby state that they have agreed that the first page of the attached Exhibit (Notice)[1] will be posted in ICE detention facilities in which Class Members are detained as of July 10, 2018. To facilitate such posting, Plaintiffs will provide to Defendants a copy of the Notice that contains the information contained therein in both English and Spanish.

The parties further agree that the second page, or Exhibit (Election Page) will be provided only to Class Members subject to a final order of removal in order to ensure that the Class Member has the opportunity to make an affirmative, knowing, and voluntary decision whether to be removed with or without the Class

---

[1] The attached Notice is final except that the Parties seek a decision by the Court regarding the inclusion of one additional provision discussed below.

1

18cv428 DMS MDD

Member's child or children. At the time the Election Page is provided, Plaintiffs will also hand to the Class Member a copy of the Notice.

The parties have two points of clarification for resolution by this Court. First, the parties agree that for Class Members with a final order of removal who are asked to consider their rights under this Notice, Defendants will allow a specified time period between the provision of the Notice and the removal of any class members to allow time for that Class Member to consult with a lawyer or otherwise consider his or her exercise of these rights. Defendants propose that this time period be 24-hours, which is consistent with other situations in which a court order requires a delay in removal in order to permit an alien to consider his or her options. *See*, *e.g.*, *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825 (C.D. Cal. 2007) (requiring 24 hours' notice prior to removal). This time period is therefore consistent with Defendants' current operations related to any notification of rights prior to removal.

Plaintiffs propose a 48-hour time period. Plaintiffs' believe this time period is necessary because of the confusion surrounding this case for months and the fact that there are more than 2,000 Class Members. Given the number of Class Members, it will be nearly impossible to get attorneys to them within 24 hours.

Second, Plaintiffs also seek inclusion in the Notice language advising non-Class Members that they may nonetheless have a right to reunification and should

18cv428 DMS MDD

contact an attorney. Plaintiffs believe this language is necessary because parents may wrongly assume that if they are not Class Members, they have lost their children forever. As the Court has made clear, individuals with criminal convictions are not part of the Class, but may still be entitled to reunification with their children under the Due Process Clause if their conviction does not bear on their fitness to provide care for their children. Under the Government's version of the Notice, however, Class Members will likely be confused that their right to reunification hinges solely on whether they are Class Members. Plaintiffs do not believe that Defendants are in any way prejudiced by the inclusion of this short addition to the Notice. Given what is at stake for these families, Plaintiffs believe that it is appropriate to include this language.

Defendants object to the inclusion of such language, as the Notice is intended to explain the rights of Class Members pursuant to the preliminary injunction issued by this court. Defendants are concerned that the inclusion of an advisal for individuals outside the class would be inappropriate and may lead to confusion. In fact, the inclusion of such an advisal in the Notice may lead the non-Class Members to believed that they are represented by Class Counsel, and that the same is legal advice.

The parties ask this Court to resolve these two issues either through written order or on the record at the status conference set for July 10, 2018.

18cv428 DMS MDD

1  DATED: July 9, 2018                    Respectfully submitted,

2

3                                          /s/ Lee Gelernt
                                           Lee Gelernt*
4                                          Judy Rabinovitz*
                                           Anand Balakrishnan*
5                                          AMERICAN CIVIL LIBERTIES UNION
6                                          FOUNDATION
                                           125 Broad St., 18th Floor
7                                          New York, NY 10004
8                                          T:  (212) 549-2660
                                           F:  (212) 549-2654
9                                          *lgelernt@aclu.org*
                                           *jrabinovitz@aclu.org*
10                                         *abalakrishnan@aclu.org*
11

12                                         Bardis Vakili (SBN 247783)
                                           ACLU FOUNDATION OF SAN DIEGO
13                                         & IMPERIAL COUNTIES
14                                         P.O. Box 87131
                                           San Diego, CA 92138-7131
15                                         T: (619) 398-4485
16                                         F: (619) 232-0036
                                           *bvakili@aclusandiego.org*
17

18                                         Stephen B. Kang (SBN 292280)
                                           Spencer E. Amdur (SBN 320069)
19                                         AMERICAN CIVIL LIBERTIES UNION
20                                         FOUNDATION
                                           39 Drumm Street
21                                         San Francisco, CA 94111
22                                         T:  (415) 343-1198
                                           F:  (415) 395-0950
23                                         *skang@aclu.org*
24                                         *samdur@aclu.org*

25                                         *Attorneys for Petitioners-Plaintiffs*
26                                                *Admitted Pro Hac Vice*

27
                                           CHAD A. READLER
28

                                4                    18cv428 DMS MDD

Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

18cv428 DMS MDD

**Notice of Potential Rights for
Certain Detained Alien Parents Separated from their Minor Children**

On June 26, 2018, a federal court issued a nationwide preliminary injunction in the case of *Ms. L v. I.C.E.*, ---F. Supp. 3d---, 2018 WL 3129486 (S.D. Cal. June 26, 2018).

You may be a class member who has rights under this lawsuit if:

- You are or were detained in custody by the U.S. Department of Homeland Security (DHS); and
- Your minor child was separated from you by DHS and is detained in the custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement (ORR), ORR foster care, or DHS custody.

If you are determined to be a class member:

- The government must reunify you with your child.
- You do NOT need to take any action to be reunified with your child.
- The government must reunify you by the following dates unless otherwise ordered by the Court:
    a.  If your child is younger than 5 years old, he or she must be reunified with you by July 10, 2018.
    b.  If your child is 5 or older, he or she must be reunified with you by July 26, 2018.
- You do NOT need to agree to removal from the United States in order to be reunified with your child.  You may continue to fight your case.  You should NOT be pressured to agree to removal in order to be reunified with your child.

You are not a class member and do not have rights under this lawsuit if:

- You were apprehended by DHS in the interior of the United States;
- You have a criminal history other than illegal entry;
- You have a communicable disease;
- A determination is or has been made that you are unfit or present a danger to your minor child.

If you have any questions about your potential rights, please contact the lawyers for the case at 646-905-8892 or write to the lawyers at this address:

Ms. L. Class Counsel
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

IMPORTANT

**Instructions:** This information on this page must be read to the alien parent in a language that he/she understands.  The Notice must be given to the alien parent at the same time as this form.  The alien parent should indicate which option he/she is choosing by signing the appropriate box below.

You DO NOT have to agree to removal from the United States in order to be reunified with your child.  Even if you continue to fight your case, the government must still reunify you.

IF YOU LOSE YOUR CASE AND THE GOVERNMENT IS GOING TO REMOVE YOU FROM THE UNITED STATES, you must decide at that time whether you want your child to leave the United States with you.

**Parent Name / Nombre de Padre:** _____

**Parent A # / A # de Padre:** _____

**Country of Citizenship / Pais de Ciudadania:** _____

**Detention Facility / El Centro de Detención:** _____

**Child(ren) Name(s) / Nombre de Hijo:** _____

**Child(ren) A # / A # de Hijo:** _____

CHOOSE ONE OPTION:

_____ If I lose my case and am going to be removed, I would like to take my child with me.

_____ If I lose my case and am going to be removed, I do NOT want to take my child with me.

---

**Certificate of Service**

I hereby certify that this form was served by me at _____
(Location)

on _____ on _____, and the contents of this
(Name of Alien)                          (Date of Service)

notice were read to him or her in the _____ language.
(Language)

_____        _____
Name and Signature of Officer                Name or Number of Interpreter (if applicable)

**Notice of Potential Rights for**
**Certain Detained Alien Parents Separated from their Minor Children**

On June 26, 2018, a federal court issued a nationwide preliminary injunction in the case of *Ms. L v. I.C.E.*, ---F. Supp. 3d---, 2018 WL 3129486 (S.D. Cal. June 26, 2018).

You may be a class member who has rights under this lawsuit if:

- You are or were detained in custody by the U.S. Department of Homeland Security (DHS); and
- Your minor child was separated from you by DHS and is detained in the custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement (ORR), ORR foster care, or DHS custody.

If you are determined to be a class member:

- The government must reunify you with your child.
- You do NOT need to take any action to be reunified with your child.
- The government must reunify you by the following dates unless otherwise ordered by the Court:
  a.  If your child is younger than 5 years old, he or she must be reunified with you by July 10, 2018.
  b.  If your child is 5 or older, he or she must be reunified with you by July 26, 2018.
- You do NOT need to agree to removal from the United States in order to be reunified with your child. You may continue to fight your case. You should NOT be pressured to agree to removal in order to be reunified with your child.

You are not a class member ~~and do not have rights under this lawsuit~~ if:  | Comment [A1]: Plaintiffs would remove this language.

- You were apprehended by DHS in the interior of the United States;
- You have a criminal history other than illegal entry;
- You have a communicable disease;
- A determination is or has been made that you are unfit or present a danger to your minor child.

**IMPORTANT:  Even if you are not a class member, if you were separated from your children, you may still have a right to be reunified with your child, and should contact the lawyers in this case by phone or by writing a letter.**  | Comment [A2]: Plaintiffs would add this language.

If you have any questions about your potential rights, please contact the lawyers for the case at 646-905-8892 or write to the lawyers at this address:

Ms. L. Class Counsel
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, NY 10004

**IMPORTANT**

**Instructions:** This information on this page must be read to the alien parent in a language that he/she understands. The Notice must be given to the alien parent at the same time as this form. The alien parent should indicate which option he/she is choosing by signing the appropriate box below.

You DO NOT have to agree to removal from the United States in order to be reunified with your child. Even if you continue to fight your case, the government must still reunify you.

IF YOU LOSE YOUR CASE AND THE GOVERNMENT IS GOING TO REMOVE YOU FROM THE UNITED STATES, you must decide at that time whether you want your child to leave the United States with you.

**Parent Name / Nombre de Padre:** _____
**Parent A # / A # de Padre:** _____
**Country of Citizenship / País de Ciudadanía:** _____
**Detention Facility / El Centro de Detención:** _____
**Child(ren) Name(s) / Nombre de Hijo:** _____
**Child(ren) A # / A # de Hijo:** _____

CHOOSE ONE OPTION:

_____ If I lose my case and am going to be removed, I would like to take my child with me.

_____ If I lose my case and am going to be removed, I do NOT want to take my child with me.

**_____ I do not have a lawyer, and I want to talk with a lawyer before deciding whether I want my child removed with me.** _____

> **Comment [A3]:** Plaintiffs believe there should be 48 hours to consult with a lawyer; Defendants believe it should be 24 hours.

---

**Certificate of Service**

I hereby certify that this form was served by me at_____
(Location)

on _____ on _____, and the contents of this
(Name of Alien)         (Date of Service)

notice were read to him or her in the _____ language.
(Language)

_____    _____
Name and Signature of Officer     Name or Number of Interpreter (if applicable)

---

# DEFENDANTS' EXHIBIT 4

1  CHAD A. READLER
2  Acting Assistant Attorney General
   SCOTT G. STEWART
3  Deputy Assistant Attorney General
   WILLIAM C. PEACHEY
4  Director
5  Office of Immigration Litigation
   U.S. Department of Justice
6  WILLIAM C. SILVIS
7  Assistant Director
   Office of Immigration Litigation
8  SARAH B. FABIAN
9  Senior Litigation Counsel
   NICOLE MURLEY
10 Trial Attorney
11 Office of Immigration Litigation
   U.S. Department of Justice
12 Box 868, Ben Franklin Station
13 Washington, DC 20442
   Telephone: (202) 532-4824
14 Fax: (202) 616-8962
15

16 ADAM L. BRAVERMAN
   United States Attorney
17 SAMUEL W. BETTWY
18 Assistant U.S. Attorney
   California Bar No. 94918
19 Office of the U.S. Attorney
   880 Front Street, Room 6293
20 San Diego, CA 92101-8893
21 619-546-7125
   619-546-7751 (fax)
22

23 *Attorneys for Federal Respondents-*
24 *Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN
DIEGO & IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

25
26
27
28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

        Petitioners-Plaintiffs,

    vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

        Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT
REGARDING REUNIFICATION**

On July 9, 2018, this Court held a status conference, and ordered the parties to file a joint report on July 10, 2018, "setting forth how many Class Members have been or will be reunited with their children by the court-imposed deadline, and how many Class Members may not be reunited with their children by the court-imposed deadline due to legitimate logistical impediments that render timely compliance impossible or excusable . . . ." ECF No. 95 at 2. The parties submit this joint status report in accordance with the Court's instruction.

I.    **COMPLIANCE**

    A. **Defendants' Position**

As previously reported to the Court, Defendants have identified 102 children under age 5 who, upon initial review by the U.S. Department of Health and Human Services ("HHS") were determined potentially to have been separated from a parent, and who therefore were potentially the children of class members. Upon

further review, and based on the latest available information at the time of filing,

Defendants report the following regarding the reunification scenarios for those 102

children.

### *Not Eligible For Reunification*

- 14 are not eligible for reunification because their parents are not class members.
    - o 8 parents had serious criminal history discovered during background checks (criminal histories identified include child cruelty and narcotics, human smuggling, a warrant for murder, and robbery).
    - o 5 adults were determined not to be the parent of the accompanying child.
    - o 1 parent faces credible evidence of child abuse.

- 2 are not eligible for reunification because their parents are not class members at this time.
    - o 1 parent has been determined to present a danger to the child at this time because an adult in the household where the parent plans to live with the child has an outstanding warrant for aggravated criminal sexual abuse against a 10 year old girl. This determination can be reconsidered if the parent identifies a different living situation.
    - o 1 parent detained in ICE custody is currently being treated for a communicable disease. When the parent no longer has a communicable disease, the reunification process can proceed.

- 10 are not eligible for reunification at this time. They will be assessed for reunification after they are released from criminal custody, provided that Defendants are made aware of that release.
    - o 8 parents are in the custody of U.S. Marshals Service. They will be assessed for reunification after they are released from criminal custody and are transferred to U.S. Immigration and Customs Enforcement ("ICE") custody.
    - o 2 additional parents are in state or county custody. They will be assessed for reunification after they are released from criminal

18cv428 DMS MDD

custody, provided that Defendants are made aware of that release.

- 1 child cannot be reunified at this time because the parent's location has been unknown for more than a year. Defendants are unable to conclusively determine whether the parent is a class member, and records show the parent and child might be U.S. citizens.

*Likely Eligible For Reunification*

- 4 children were reunified with family members before the July 10 deadline.
  - o 1 was released to a parent that ICE released into the U.S.
  - o 1 was released to a parent in the U.S. with the other parent being deported.
  - o 1 was released to a parent in the U.S. with the other parent being still in ICE custody
  - o 1 voluntarily departed with the child's adult sibling, with the consent of the parent who is still in ICE custody.

- 51 are eligible for reunification with a parent who is currently in ICE detention.
  - o 34 parents have cleared a criminal background check and parentage has been verified through a positive DNA match. They are expected to be reunified on July 10, 2018.
  - o 16 parents have cleared a criminal background check but the process for verifying parentage has not yet been completed. They are expected to be reunified on July 10, 2018, or as soon thereafter as parentage can be verified.
  - o 1 parent has criminal background check results that are still in question and are being resolved today.

- 20 are eligible for reunification but cannot be reunified by July 10 due to legitimate logistical impediments that render timely compliance impossible or excusable.
  - o 12 of those parents were removed from the United States. The Government will work with Plaintiffs' counsel to contact these 12 parents and determine whether they wish to have their child reunified with them in their home country. The parties'

18cv428 DMS MDD

proposals regarding the process to be followed for these individuals are laid out below.
- o 8 parents were previously released into the United States and are undergoing safety and suitability screening in accordance with the TVPRA.

Defendants contend that the above numbers show that Defendants are in compliance with the Court's order. Of the 75 children eligible for reunification, Defendants have already reunified 4, and expect to reunify 34 by the July 10 deadline, and 16 soon thereafter pending confirmation of eligibility. Of the remaining 20, 8 will be reunified as soon as HHS can determine that the parent is not unfit or a danger to the child in accordance with its existing procedures under the TVPRA, and the remaining 12 may be reunified if their parents can be located and if those parents request reunification, and reunification is otherwise proper under the Court's order. Moreover, of the 27 children not currently eligible for reunification, 14 have parents who are not class members, and the remaining 13 may be reunified if and when their parents no longer present a danger, have a communicable disease, or are in criminal custody so long as ICE is aware of their release, and it is otherwise determined that they meet the criteria for reunification. Thus, any children not being reunified by the July 10 deadline are not being reunified because of legitimate logistical impediments that render timely compliance impossible or excusable, and so Defendants are complying with the Court's order.

**B. Plaintiffs' Position**

Plaintiffs do not agree that Defendants have fully complied with the initial reunification deadlines in the Court's preliminary injunction order.  Plaintiffs received Defendants' updated numbers within the past hour, and have no independent verification that these numbers are accurate, or that there are not additional children under five who should be on the government's list.  Plaintiffs, however, can state the following:  By today's deadline, Defendants only plan to reunify about half of the parents with children under five years old.  Plaintiffs recognize that Defendants cannot yet reunify the parents who are currently being held in criminal custody.  But as to all other Class Members with children under five, the government is not in compliance with the clear deadline ordered by the Court.

1.     For the Class Members who were deported without their children, Defendants have not even tried to contact them or facilitate their reunification by today.  Their children are stranded in this country because of Defendants' actions, and yet Defendants have apparently done nothing to facilitate their reunification.

2.     For the Class Members who have been released from custody, Defendants have not explained why they could not facilitate their reunification by the deadline.  Defendants have all of these parents' contact information, and there are apparently only 8 of them.  To the extent Defendants have chosen to subject

18cv428 DMS MDD

these parents to ORR's lengthy sponsorship process, Plaintiffs do not believe those procedures are required. Moreover, even if Defendants believed those procedures would prevent them from reunifying 8 parents in two weeks, they should have informed the Court far earlier than last Friday's status conference, a mere four days before the deadline.

3.      There are Class Members that Defendants do not currently plan to release today, because Defendants have not yet completed their DNA tests. Defendants have not explained why they could not complete these tests or verify parentage through other means by today's deadline.

4.      There is one child for whom Defendants have not even identified a parent. They have not explained what steps they have taken to find this Class Member.

## II.     DEADLINES

- **Removed Parents:** Defendants have provided to Plaintiffs the date of removal and country of removal for all known removed parents with children under 5. Defendants will provide to Plaintiffs the location of the ICE detention facility where each removed parent was last held. Plaintiffs' counsel will seek to locate those removed parents and provide them with notice of their right to be reunified. If any parent expresses that he or she wishes to be reunified with his or her child then Defendants will facilitate that reunification.

  - Plaintiffs' Position: Plaintiffs believe that once Defendants are notified that a removed parent wishes to be reunified with his or her child, reunification should occur within 7 days.

6

18cv428 DMS MDD

o <u>Defendants' Position</u>: Defendants ask the Court to allow a more flexible time period because there are several issues that may impact the timing of removal for these children. For example, Defendants would need to obtain travel documents for the child, and any ongoing removal proceedings for that child would have to be terminated which might require separate waiver from the parents and/or approval from an immigration judge. Moreover, if the child has already obtained relief and is in lawful status, then Defendants would not have the ability to facilitate reunification with a parent abroad. Because pieces of this process are out of Defendants hands, Defendants request that the Court allow for a flexible schedule for such removals that considers the need to complete these steps prior to removal for reunification.

- **Reunification To Released Parents**: This issue will be determined, at least in part, by the Court's ruling on the parties' joint submission on the procedures to be followed by HHS under the Court's order. Accordingly, the parties will meet and confer following that ruling and will submit a proposal, or respective positions, on this issue for the Court's consideration.

DATED: July 10, 2018                     Respectfully submitted,

                                         /s/ Lee Gelernt
                                         Lee Gelernt*
                                         Judy Rabinovitz*
                                         Anand Balakrishnan*
                                         AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION
                                         125 Broad St., 18th Floor
                                         New York, NY 10004
                                         T:  (212) 549-2660
                                         F:  (212) 549-2654
                                         *lgelernt@aclu.org*
                                         *jrabinovitz@aclu.org*
                                         *abalakrishnan@aclu.org*

18cv428 DMS MDD

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF SAN DIEGO
& IMPERIAL COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T: (415) 343-1198
F: (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*\*Admitted Pro Hac Vice*

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
Civil Division

1   U.S. Department of Justice
2   P.O. Box 868, Ben Franklin Station
    Washington, DC 20044
3   (202) 532-4824
4   (202) 616-8962 (facsimile)
    sarah.b.fabian@usdoj.gov
5
6   ADAM L. BRAVERMAN
    United States Attorney
7   SAMUEL W. BETTWY
    Assistant U.S. Attorney
8
9   *Attorneys for Respondents-Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DEFENDANTS' EXHIBIT 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Ms. L.; et al.,

     Petitioners-Plaintiffs,

v.

U.S Immigration and Customs
Enforcement ("ICE"); et al.,

     Respondents-Defendants.

Case No.: 18cv0428 DMS (MDD)

**ORDER FOLLOWING STATUS
CONFERENCE**

  A status conference was held on July 9, 2018, after which the parties submitted two Joint Status Reports. In the first of those Reports, the parties identified some disagreements about the processes to be followed prior to reunification of Class Members and their children, with a particular eye toward the reunifications of children under age 5 by the court-ordered deadline of July 10, 2018. The second Report provided more detailed information about these parents, *i.e.*, those with children under the age of 5, and set out which of those parents were ineligible for reunification, which parents were ineligible for reunification by the July 10, 2018 deadline, how many parents had already been reunified with their children, which parents were eligible for reunification by the July 10, 2018 deadline, and which parents were eligible for reunification, but not by the July 10, 2018 deadline.

1

A follow-up status conference was held on July 10, 2018, to discuss these issues with counsel. During that conference, the Court explained ICE's past procedure for dealing with parents and children who entered ICE custody together. That procedure was geared toward resolving "any doubt about whether they are parent and child, and second, whether there is information that causes a concern about the welfare [of] the child, such as the adult having a significant criminal history." (Decl. of Mario Ortiz in Supp. of Opp'n to Am. Mot. for Prelim. Inj. ¶¶ 3, ECF No. 46-1.)) If there were no "concerns about the family relationship or welfare of the child, the [parent and child would] be detained at a family residential center or, if appropriate, released to a sponsor or non-governmental organization." (*Id.*) If there were concerns, the child would "be transferred to the U.S. Department of Health and Human Services Office of Refugee Resettlement (ORR) for care and placement consideration." (*Id.*) The Court explained this procedure had been in effect for many years, and had been effective in ensuring the safety and well-being of children processed through ICE custody.

The Court contrasted this procedure with the procedure for vetting sponsors for "unaccompanied minors" under the TVPRA. As explained during the hearing, and in previous orders in this case, the TVPRA was promulgated to address a different situation, namely, what to do with alien children who were apprehended *without their parents* at the border or otherwise. In that situation, the lengthy and intricate vetting process makes sense because arguably the Government is not dealing with a parent, but is instead dealing with perhaps another relative or even a foster-type parent. That detailed vetting process was not meant to apply to the situation presented in this case, which involves parents and children who were apprehended together and then separated by government officials. Rather, it appears ICE had a more streamlined procedure for that situation, as set out above.

Both of these procedures, at their core, aim to promote the best interests of the children who are taken into government custody. This Court also seeks to serve that interest, and has attempted to do so by focusing on the two issues set out in ICE's past procedure: Ensuring the adult is the parent of the accompanied child, and ensuring the

18cv0428 DMS (MDD)

parent does not present a danger to the child's welfare. Both of these concepts are built into the definition of the class certified by the Court, as well as the preliminary injunction. And in the context of this case, both of these concerns can be addressed by a process similar to the one previously used by ICE in dealing with parents and children apprehended together. Accordingly, in this case, the Government need not comply with the onerous policies for vetting child sponsors under the TVPRA prior to reunifying Class Members with their children.[1] Rather, the Government need only comply with the more streamlined procedure set out during the hearing.

As explained therein, that procedure allows for DNA testing of adult and child, but only when necessary to verify a legitimate, good-faith concern about parentage or to meet a reunification deadline. To the extent DNA testing is warranted under those circumstances, it should be completed in accordance with Plaintiffs' proposal in the Joint Status Report at pages 7-8. (*See* ECF No. 96.)

On the dispute surrounding follow-up background checks of parents, the Court agrees with Plaintiffs that those background checks should not delay reunification. Certainly, if the Government has performed a background check on a parent prior to reunification, and that background check indicates the parent may pose a danger to the child, reunification need not occur unless and until those concerns are resolved. However, the Government must have a good faith belief that further background investigation is warranted before delaying reunification on that basis. In general, background investigations of the type contemplated by the TVPRA are not required here, and the Government's inability to complete that type of background investigation prior to a reunification deadline will not be a valid reason for delaying reunification past a court-imposed deadline. Presumably, the Government has performed or will perform a

---

[1] The Court notes the vetting process and procedure set out by the Government here is a matter of ORR policy. The process and procedure are not mandated by statute or regulation.

3

background check on all parents who could fall within the Class, and those background checks will be completed well in advance of the reunification deadlines, which will obviate the need for any delays on this ground.

The next dispute concerns background checks on other adults in the household where the Class Member and his or her child will reside. As with the preceding issue, these background checks are part of the TVPRA procedures, and they are not necessary here where the child is being reunited with a parent. As Plaintiffs' counsel pointed out during the hearing, the touchstone here is the interest of the parent in making decisions for their child, and presumably the parent has the child's best interest in mind.

The next dispute concerns "sponsor care plans," which is another procedure contemplated by the TVPRA.[2] As with the procedures discussed above, the Court declines to require Class Members to submit these plans prior to or as a condition of reunification with their children.

Next, the parties dispute whether Class Members must sign "sponsor care agreements" and attend legal orientation programs, again both of which are policies contemplated by the TVPRA. Here, as above, Plaintiffs do not object to executing these agreements or attending these orientation programs, provided those procedures do not delay reunification of Class Members and their children. The Court agrees with Plaintiffs, and thus declines to impose these requirements as a condition to reunification.

The final dispute concerns children who may pose a danger to themselves or others. This concern is not applicable to the children under age 5 who are scheduled for reunification today. To the extent this concern is relevant to the older children, the parties may raise that issue in a further status report.

/ / /

/ / /

---

[2] The parties indicated there was also a dispute about whether Class Members must provide a proof of address. However, Plaintiffs do not object to that requirement.

18cv0428 DMS (MDD)

With these rulings, the Court anticipates the Government will be reuniting fifty-nine (59) Class Members with their children by the end of the day today. This will be in addition to the four (4) parents and children that have already been reunified.

Counsel shall submit a further joint status report to the Court on or before **3:00 p.m. on July 12, 2018**. That report should provide an update on Defendants' compliance with the reunification deadline for children under age 5, and a status on the efforts to reunify the remaining members of the Class with their children over age 5. A further status conference shall be held at **1:00 p.m.** on **July 13, 2018**. The Court has set up a dial in number for counsel and any members of the news media that wish to attend. ***This number is for counsel and media only***, who should follow the steps below to connect to the conference call. Members of the general public may appear in person.

1. Dial the toll free number: **877-873-8018**;

2. Enter the Access Code: **9911153** (Participants will be put on hold until the Court activates the conference call);

3. Enter the Participant Security Code **07130428** and Press # (The security code will be confirmed);

4. Once the Security Code is confirmed, participants will be prompted to Press 1 to join the conference or Press 2 to re-enter the Security Code.

**IT IS SO ORDERED**.

Dated: July 10, 2018

Hon. Dana M. Sabraw
United States District Judge

18cv0428 DMS (MDD)

# DEFENDANTS' EXHIBIT 6

CHAD A. READLER
Acting Assistant Attorney
General
SCOTT G. STEWART
Deputy Assistant Attorney
General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

Lee Gelernt*
Judy Rabinovitz*
Anand Balakrishnan*
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
T:  (212) 549-2660
F:  (212) 549-2654
*lgelernt@aclu.org*
*jrabinovitz@aclu.org*
*abalakrishnan@aclu.org*

Bardis Vakili (SBN 247783)
ACLU FOUNDATION OF
SAN DIEGO & IMPERIAL
COUNTIES
P.O. Box 87131
San Diego, CA 92138-7131
T: (619) 398-4485
F: (619) 232-0036
*bvakili@aclusandiego.org*

Stephen B. Kang (SBN 292280)
Spencer E. Amdur (SBN 320069)
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
T:  (415) 343-1198
F:  (415) 395-0950
*skang@aclu.org*
*samdur@aclu.org*

*Attorneys for Petitioners-Plaintiffs*
*Admitted Pro Hac Vice

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

        Petitioners-Plaintiffs,

vs.

U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT, et
al.,

        Respondents-Defendants.

Case No. 18cv428 DMS MDD

**JOINT STATUS REPORT
REGARDING REUNIFICATION**

On July 10, 2018, this Court held a status conference, and ordered the parties to file a joint report on July 112, 2018 regarding the ongoing reunification process. The parties submit this joint status report in accordance with the Court's instruction.

I.    **DEFENDANTS' POSITIONS**

    **A. Defendants are in Compliance With The Court's Order**

      Defendants are in compliance with the Court's order. Defendants have now reunified 57 children identified by Defendants and this Court as eligible for reunification at the status conference on July 10, 2018. Of the 63 identified by the Court, 6 were ultimately determined not to be eligible for reunification after further information was obtained regarding either parentage or the criminal background of the parent. Additionally, Defendants identified one additional family with a child

1

18cv428 DMS MDD

under age 5 that was eligible for reunification, and was able to reunify that family

as well.

For these children, cases were resolved as follows:

- 6 were determined not to be eligible for reunification following completion of parentage and background checks:
  - 3 had parents with serious criminal history
  - 1 was excluded because the accompanying adult was not the parent of that child
  - 1 was excluded on suspicion of not being the parent or of posing a risk to the child, because the accompanying adult presented a false birth certificate
  - 1 had a parent who was determined to be in the custody of the U.S. Marshals, not in ICE custody as previously believed

- 38 were reunified on or before July 10, 2018

- 19 were reunified on July 11, 2018 (this number includes one additional child who was identified by Defendants since their last submission to this Court)

- 1 was reunified by 6:00 a.m. local time on July 12, 2018.

For the 20 children who were reunified on July 11 and 12, 2018,

transportation arrangements had been made on July 10, but could not be completed

for logistical reasons specific to each case until July 11 and July 12.  Defendants

detail below the reasons for any delay in reunification, as well as the reasons why

21 of the parents of children originally believed to be class members were

ultimately determined not to be members of the class due to criminal history,

danger to the child, or not being the parent.

18cv428 DMS MDD

**Criminal background of adults excluded from the class**:

1. Warrant for murder in Guatemala
2. Child cruelty and narcotics convictions
3. Suspected transnational criminal organization involvement and human trafficking
4. Outstanding criminal warrant in El Salvador
5. 2 DUI convictions
6. Significant criminal history including assault conviction
7. Outstanding warrant in Florida for DUI
8. DUIs, assault, stolen vehicle
9. Robbery conviction
10. Wanted by El Salvador
11. Criminal charges including assault

**Not a parent or parentage in question**:

12. Adult said he is uncle, not father
13. Negative DNA match, adult indicated he is not the child's father
14. Adult said she is grandmother, not mother
15. During DNA testing, adult disclosed she is not the child's mother
16. Negative DNA match, still under investigation
17. Adult disclosed that she is grandmother, not the parent
18. Adult presented false birth certificate, still under investigation

**Release presents danger to the child**:

19. Before court order, adult was required to submit information and fingerprints of other adults in household where she will live with the child; background check on adult male in household shows an active warrant for aggravated criminal sexual assault of a 10-year-old female.
20. Child made allegations of abuse against adult

**Communicable Disease**

21. Parent is being treated for communicable disease in ICE custody

**Reunifications completed on July 11 and 12:**

1. Reunification in ICE custody completed at midnight Pacific time on 7/10, 3:00 a.m. Eastern on 7/11
2. Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

3

18cv428 DMS MDD

3. Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

4. Parental verification was not complete; adult and child were in distant locations in New York state, reunification occurred before noon on 7/11.

5. Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

6. Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

7. Reunification in ICE custody completed at midnight Pacific time on 7/10, 3:00 a.m. Eastern on 7/11

8. Reunification was scheduled for 10:30 p.m. Pacific time on 7/10, 12:30 am Central time on 7/11

9. Parental verification was not complete; child placed on flight at 9:55 p.m. Pacific time 7/10, reunification occurred at 5:35 a.m. Eastern 7/11

10. Parental verification was not complete; Texas, reunification complete 7/11

11. Parental verification was not complete; adult was in Texas and child was in Maryland, reunification completed on 7/11

12. Parental verification was not complete; Texas, reunification complete 7/11

13. Parental verification was not complete; Texas, reunification complete 7/11

14. Parental verification was not complete; parent was in Louisiana and child in New York, reunification completed 6:00 a.m. on 7/12

15. Parental verification was not complete; parent was in Texas and child in Arizona, reunification completed on 7/11

16. Parental verification was not complete; child was in New York and parent was released to the interior, reunification in Georgia complete 7/11

17. Parental verification was not complete; discharge was coordinated with discharge of sibling 5 years of age or older, reunification completed on 7/11

18. Parental verification was not complete; child was in New York and parent was released to the interior, reunification in Georgia complete 7/11

19. Parental verification was not complete; child was in New York and parent was released to the interior in Texas, reunification complete in Texas 7/11

20. Parental verification was not complete; child was in Illinois and parent was released to the interior, reunification in Texas complete 7/11

The 23 remaining children aged 0–4, who HHS originally listed as possible candidates for reunification under the Court's order, cannot currently be reunified with their parents because: their parents are in criminal custody (11), or their

4

18cv428 DMS MDD

parents have been removed (12) and they will be considered for reunification on a timetable to be determined as Plaintiffs and Defendants work together to locate those parents and determined if they wish to be reunified. One child on the original list has a parent who may or may not be a United States citizen (insufficient information is available to make this determination, and the parent and others are not available to provide that information). The child was separated from her parent in 2015 when her parent was arrested on an outstanding warrant by the U.S. Marshals Service. Defendants have not been aware of the parent's location since then and they remain unable to locate that parent. Because the parent is not available, it is not possible to reunite the child with the parent. Unless the parent is located, HHS will provide care and seek placement for the child using its ordinary programs and procedures.

**B. HHS Truncated Processes to Comply With the July 10, 2018 Order**

In its July 10, 2018 ruling and order, the Court instructed Defendants to release children on Defendants' list who Defendants associated with adults in ICE custody, and whose affirmative parental verification, including DNA testing, had not yet been completed. The Court also instructed that reunification should not be delayed for HHS to affirmatively verify parental status.

There were 16 such adults in ICE custody. Of those: 1 was found to be in Marshal's custody, not in ICE custody; 1 DNA test result came back negative prior

18cv428 DMS MDD

to the Court's deadline, causing good faith concern about parentage and risk to the child; and 1 was found to have presented a false birth certificate, also causing good faith concern about parentage and risk to the child. For the other 13 adults, HHS transferred the children to ICE for reunification with those adults without further parental verification process.

The Court's order also required Defendants, by the Court's deadline, to reunify 8 children who Defendants had associated with adults previously released to the interior of the United States. At the time of the Court's order, HHS had not yet completed parental verification of those purported parents, nor had HHS received all biographical or fingerprint information that it requested for any other adults who would be living in the same household upon release of the child.[1] HHS was able to confirm parentage of 1 of the 8 adults prior to the deadline.  For the remaining 7 of the 8 adults, in compliance with the Court's order, HHS released the children to the adults despite not having completed its affirmative verification that those adults were the parents. HHS also did not complete any background checks on other adults living in the same households as the children upon release.

**C. Reunification With Removed Parents**

---

[1] In at least one instance where background investigations of cohabitants were completed prior to the Court's deadline, HHS found that an adult in the household had an outstanding warrant for aggravated sexual abuse of a 10-year-old child.

With regard to those children whose parents are removed, Defendants are working with Plaintiffs' counsel to locate those parents and to provide them notice to determine if they wish to be reunified with their children. It is difficult to determine how much time will be necessary for those reunification until the parents are contacted and it can be determined what those reunifications would entail. Defendants ask the Court to allow those reunifications to occur on a flexible schedule, and propose that for each such child for whom reunification is requested, once the parent is located and the request for reunification is made, Defendants will work with Plaintiffs' counsel to identify the steps that need to be taken for reunification and determine a reasonable amount of time to complete that process. If the Court is inclined to set a definitive timeframe, Defendants request that any deadline begin on the date that Defendants receive travel documents for the child.

## C. Individuals in State Custody

Defendants understand that Plaintiffs will reach out to class members in state criminal custody to ensure that they contact ORR following their release if they wish to be reunified with their child. Defendants will provide Plaintiffs with any information they have about class members who are sent to state criminal custody to assist in these communications.

**D. Reporting:**

Defendants agree that no later than July 13, 2018, they will provide Plaintiffs' counsel with a list of identified class members in ICE custody. Defendants also agree that no later than July 13, 2018, they will provide Plaintiffs' counsel with a list of identified children of class members. Defendants agree to meet and confer with Plaintiffs about the provision of additional information. Defendants are aware that Plaintiffs are requesting to receive a chart with the level of detail that was provided regarding the minors under-age-5, however the compilation of that information took a significant amount of time on the part of operators whose time would be better spent facilitating reunification and production of the same level of detail on a much larger scale is not operationally feasible under the current timeframes. Defendants request the opportunity to continue to meet and confer with Plaintiffs to see if there is an option that would provide Plaintiffs with the information that they need while minimizing demands on the part of agency operators.

**II. PLAINTIFFS' POSITIONS**

**A. Reunifications of Children Under Five**

1. As of today, Defendants represent that they have reunified 58 Class Members. Of the 103 Class Members Defendants initially identified, apparently 10 remain in criminal custody, 12 were deported, and 23 have apparently dropped out of the class or are not eligible for reunification at this time, either because they

had criminal histories, evidence of abuse, communicable diseases, or they were not actually the parents.

2. Plaintiffs have not yet received any specific information about most of the 23 individuals who Defendants claim have dropped out of the class or are ineligible for reunification. Plaintiffs have therefore not been able to verify whether those parents are, indeed, Class Members eligible for reunification at this time. Plaintiffs have also not been able to determine whether any criminal convictions those parents have render them a danger to their children—and therefore not entitled to reunification at all—or merely not Class Members.

3. As for the 58 parents whom Defendants have apparently reunified, Plaintiffs have no independent verification that these 58 parents have in fact been reunited with their children. During the meet and confer process leading up to July 10, Defendants claimed that they would provide Plaintiffs' counsel with notice of the time and place for each reunification, so that Plaintiffs' counsel could arrange for private and NGO service providers to assist the families and verify reunification. This did not happen. Defendants did not provide specific time and place information for a single Class Member. Instead, Defendants only provided a general prediction about how most Class Members would be reunified.

Defendants' lack of communication about reunification logistics caused significant problems over the last three days. Plaintiffs are now hearing about a number of troubling situations from service providers and attorneys for Class Members and their children. These problems include:

- ICE left one Class Member alone at a bus stop with her children, one of whom was six months old. Through a series of phone calls between the Class Member, her attorney, and another advocate, the Class Member finally obtained a bus ticket on Tuesday around midnight.

18cv428 DMS MDD

- One Class Member was transported through a series of ICE facilities in New Jersey and Michigan in a matter of days, with no prior notice to his counsel. ICE refused access to his counsel while he was detained in Michigan. Despite repeated requests by both the Class Member and his lawyer, ICE did not allow his counsel to be present at the point of reunification.

- A Class Member was kept in an ICE office for most of the day of her originally-scheduled reunification. ORR had processed her children for release that day. ICE officers attempted to process her for release on an ankle monitor. Due to an apparent computer malfunction, the officers were unable to complete the process. At the end of the business day, the ICE officers ceased their attempts and told the mother that she would be sent back to detention without her children.

### B. Parents Deported Without Their Children

1. Twelve Class Members with children under 5 remain separated, because they have already been deported. Plaintiffs and their NGO partners are in the process of trying to contact these parents. For those deported Class Members who choose to be reunited with their children, Plaintiffs propose that the Court order Defendants to reunify them within 7 days after the parent obtains travel documents for the child. This deadline will ensure that these Class Members are promptly reunified, and that any delay in obtaining travel documents does not affect Defendants' obligations.

2. Defendants have represented that case-specific complications might necessitate further delay. In that situation, Plaintiffs propose that the parties meet and confer about any individual case where the government presents specific, concrete reasons why 7 days is not sufficient. If any disputes remain, the parties can submit the dispute to the Court for a ruling. But the Court should reject any

18cv428 DMS MDD

request from Defendants to extend or avoid setting a deadline, which may lead to indefinite delay. Indeed, to date, Plaintiffs are not aware of any specific steps Defendants have taken even to locate these 12 Class Members.

### C. Costs of Reunification

Plaintiffs' counsel have heard reports that some Class Members have been asked to pay for the costs of reunification, such as transportation costs (and possibly DNA testing). For example, Plaintiffs' counsel was informed that one Class Member was initially told to wire around $1,900 to Western Union to pay for reunification; another Class member arranged to pay for a plane ticket before being told to cancel the ticket because someone else was purchasing a flight for the child.

It is not acceptable for Defendants to make compliance with this Court's injunction contingent on Class Members paying thousands of dollars to reunify with their children. Plaintiffs therefore ask the Court to order Defendants not to charge Class Members for any of the costs of reunification, including DNA testing and air travel, and to reimburse any individuals who were in fact charged.

### D. Remedies for Non-Compliance

Defendants claim that only 58 parents were eligible for reunification as of the July 10 deadline. As noted above, Plaintiffs have not been given sufficient information to verify the accuracy of that eligibility number.

In any event, Defendants concede that they did not meet the July 10 deadline even for these 58 Class Members. This morning, Defendants informed Plaintiffs' counsel that only 38 Class Members were reunified by the Court's deadline. The other 20 children were not returned to their parents until after July 10. In light of this non-compliance, Plaintiffs propose specific remedies in order to ensure that Defendants do not miss future deadlines. *See infra* Section E.

### E. Class Members with Children 5 and Older

As noted above, Plaintiffs believe that open communication and planning in advance are critical to ensure that Defendants do not miss the future deadlines ordered by the Court.

The past week has highlighted these concerns. Plaintiffs wrote to government counsel on July 2 to ask for a list of class members and reunification plans. The government did not provide any of this information before the July 6 status conference, when the Court ordered Defendants to produce the list the next day. That list, however, did not contain the parents' names or A numbers. Defendants did not provide that critical information necessary to locate and track Class Members until the next day—two days before the deadline.

When the deadline arrived, Defendants had not completed parentage verification or background checks for many of the class members with children under 5. The failure to complete these steps in advance delayed reunification for more than a dozen class members until after the deadline. And despite promising to provide advance notice of the time and place for each reunification, Defendants provided no specific information to Plaintiffs' counsel. As a result, Class Members' individual lawyers and service providers were left frantically scrambling to find their clients and provide support.

The following seven (7) steps are designed to address each of these failures:

1. Defendants must provide Plaintiffs with a Class List for the remaining Class Members by Monday, July 16, with all of the information that Defendants provided for the children under 5. To ensure that reunification plans are not formulated haphazardly at the last minute, this Class List should also contain complete information regarding Defendants' plans for reunifying each Class Member, which was not provided for the children under 5.

2. Defendants must complete all parentage verifications and background checks by Thursday, July 19. These steps, which must be completed prior to

12

reunification, should already be in progress or completed. One week from today should be more than enough time to complete them.

3. Starting Tuesday, July 17—the day after Defendants must provide the Class List (see above, item 1)—Defendants should file with the Court a daily report regarding the number of reunifications that have occurred that day.

4. Defendants must provide Plaintiffs' counsel, as well as Class Members' immigration lawyers (if any), with at least 24 hours advance notice of the time, place, and location of reunification. Defendants should also allow Class Members' immigration counsel access to the site of reunification.

5. For separated parents whom Defendants determine are not Class Members, Defendants must provide Plaintiffs' counsel with detailed reasons why a putative Class Member was excluded from the Class List, including, at a minimum: any criminal convictions or charges; any allegations of abuse or unfitness; or the specific reasons why parentage could not be verified.

6. If Defendants choose to reunite Class Members in family detention facilities, they should provide immediate access to immigration lawyers who can advise the Class Members of their rights. DHS facilities frequently place unwarranted restrictions on counsel access, such as limiting the rooms available to meet with lawyers, or adopting restrictive phone policies. Any lawyer seeking to meet with a Ms. L. Class Member should be provided immediate access to a private facility where the Class Member can be counseled on his or her rights. This is particularly important if that Class Member has received a removal order.

7. Defendants must establish a fund to pay for professional mental health counseling, which will be used to treat children who are suffering from severe trauma as a result of their forcible separation from their parents. The amount can be set at a later time, subject to further negotiations between the parties and rulings from the Court. Although many medical professionals have graciously offered pro

bono services for the children, who plainly are in desperate need of counseling, these medical professionals should not have to assume the costs associated with the government's policy, especially not their out-of-pocket expenses.

18cv428 DMS MDD

DATED: July 13, 2018                    Respectfully submitted,

                                        /s/ Lee Gelernt
                                        Lee Gelernt*
                                        Judy Rabinovitz*
                                        Anand Balakrishnan*
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        125 Broad St., 18th Floor
                                        New York, NY 10004
                                        T:  (212) 549-2660
                                        F:  (212) 549-2654
                                        *lgelernt@aclu.org*
                                        *jrabinovitz@aclu.org*
                                        *abalakrishnan@aclu.org*

                                        Bardis Vakili (SBN 247783)
                                        ACLU FOUNDATION OF SAN DIEGO
                                        & IMPERIAL COUNTIES
                                        P.O. Box 87131
                                        San Diego, CA 92138-7131
                                        T: (619) 398-4485
                                        F: (619) 232-0036
                                        *bvakili@aclusandiego.org*

                                        Stephen B. Kang (SBN 292280)
                                        Spencer E. Amdur (SBN 320069)
                                        AMERICAN CIVIL LIBERTIES UNION
                                        FOUNDATION
                                        39 Drumm Street
                                        San Francisco, CA 94111
                                        T:  (415) 343-1198
                                        F:  (415) 395-0950
                                        *skang@aclu.org*
                                        *samdur@aclu.org*

                                        *Attorneys for Petitioners-Plaintiffs*
                                        *Admitted Pro Hac Vice*

18cv428 DMS MDD

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
WILLIAM C. SILVIS
Assistant Director

*/s/ Sarah B. Fabian*
SARAH B. FABIAN
Senior Litigation Counsel
 NICOLE MURLEY
 Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 532-4824
(202) 616-8962 (facsimile)
sarah.b.fabian@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney

*Attorneys for Respondents-Defendants*

18cv428 DMS MDD