# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| M.G.U, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 1:18-cv-01458 (PLF) |
| | ) | |
| v. | ) | |
| | ) | |
| Kirstjen Nielsen, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

## NOTICE REGARDING STATUS OF *MS. L.* CLASS ACTION

Defendants, by and through their undersigned counsel, respectfully submit the following notice on the status of the matters in *Ms. L.*, *et al*. v. *ICE*, *et al.,* Case No. 18-cv-0428 (S.D. Cal.). Defendants provide the Court with additional materials from the *Ms. L.* class action that have been filed since the Defendants filed the July 13, 2018 status report—the Ms. L. filings are attached hereto as Defendants' Exhibits 1-3.

//

//

## INDEX OF EXHIBITS

| Exhibit | Title |
|---------|-------|
| 1 | Dkt 108, Order Following Status Conference, *Ms. L. v. U.S. ICE*, No. 18-428 (S.D. Cal.) (July 13, 2018) |
| 2 | Dkt 109, Notice, Ms. L. v. U.S. ICE, No. 18-428 (S.D. Cal.) (July 15, 2018) |
| 3 | Dkt 109-1, HHS/DHS Unified Plan of Operations For Reunification of 5-17 Year Old Population to Include Flow Chart and Summary of Required Steps, July 14, 2018, Ms. L. v. U.S. ICE, No. 18-428 (S.D. Cal.) (July 15, 2018) |

DATE: July 16, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

WILLIAM C. SILVIS
Assistant Director

SARAH B. FABIAN
Senior Litigation Counsel

By:   Nicole N. Murley
Trial Attorney
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 616-0473
Fax: (202) 616-8962
E-mail: Nicole.Murley@usdoj.gov

     and

JESSIE K. LIU, D.C. Bar #472845
United States Attorney
DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2018, I served the foregoing status report on all counsel of record by means of the District Clerk's CM/ECF electronic filing system.

/s/ Nicole N. Murley
NICOLE N. MURLEY
U.S. Department of Justice
District Court Section
Office of Immigration Litigation

*Attorney for Respondents*

# Exhibit 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Ms. L.; et al.,

               Petitioners-Plaintiffs,

v.

U.S Immigration and Customs
Enforcement ("ICE"); et al.,

               Respondents-Defendants.

Case No.:  18cv0428 DMS (MDD)

**ORDER FOLLOWING STATUS CONFERENCE**

     Over two weeks ago, this Court certified for class treatment Plaintiffs' claim that their due process rights to family integrity had been violated as a result of Defendants' policy and practice of separating families apprehended at or between ports of entry, and placing minor children who were separated from their parents in government facilities for "unaccompanied minors" run by the Department of Health and Human Services ("HHS"). The Court also issued a preliminary injunction ordering Defendants to reunify all Class Members with their minor children under the age of five by July 10, 2018, and to reunify all Class Members with their minor children age five and over by July 26, 2018.  In the class certification order, the Court was mindful of the safety of the children—stating it to be a paramount consideration—in limiting the Class to "adult parents," and carving out of the Class "migrant parents with criminal history or communicable disease" and parents

who were "unfit or present[ed] a danger to the child." The Court reiterated these concerns in its preliminary injunction by creating exceptions to reunification for parents who are "unfit or present[ ] a danger to the child."

In a filing late this afternoon and after the in-court status conference, Defendants called into question this Court's concern for the safety, welfare and well-being of the children Defendants separated from their parents, and who are now being reunited with their parents pursuant to this Court's injunction. Christopher Meekins, the Deputy Assistant Secretary for Preparedness and Response, and the Chief of Staff for the Office of the Assistant Secretary for Preparedness and Response at HHS, states, "While I am fully committed to complying with this Court's order, I do not believe that the placing of children into such situations is consistent with the mission of HHS or my core values." (Decl. of Christopher Meekins in Supp. of Status Report ("Meekins Decl.") ¶ 56, ECF No. 107-1.) It is clear from Mr. Meekins's Declaration that HHS either does not understand the Court's orders or is acting in defiance of them. At a minimum, it appears he is attempting to provide cover to Defendants for their own conduct in the practice of family separation, and the lack of foresight and infrastructure necessary to remedy the harms caused by that practice.

Following the July 10 status conference, the Court issued an order setting out ICE's previous procedures—which had apparently been in place for years—for dealing with parents and children who entered ICE custody together. Those government procedures, which the Court noted appeared to have been successful in ensuring child safety and welfare, involved ICE personnel (1) resolving "any doubt about whether they are parent and child," and (2) investigating "whether there is information that causes a concern about the welfare [of] the child, such as the adult having a significant criminal history." (Decl. of Mario Ortiz in Supp. of Opp'n to Am. Mot. for Prelim. Inj. ¶¶ 3, ECF No. 46-1.) If there were no "concerns about the family relationship or welfare of the child, the [parent and child would] be detained at a family residential center or, if appropriate, released to a sponsor or non-governmental organization." (*Id.*) If there were concerns, the child would "be transferred to the U.S. Department of Health and Human Services Office of Refugee

Resettlement (ORR) for care and placement consideration." (*Id.*)  It was the Court's intent that the reunification of Class Members and their children would proceed along these lines, lines the Government itself had used prior to the implementation of the recent family separation policy.

Because the facts of this case presented a situation wholly different from those underlying the Trafficking Victims Protection and Reauthorization Act, Pub. L. No. 110-457 (Dec. 23, 2008), the Court found Defendants did not have to go through all of ORR's policies and procedures prior to reunifying Class Members and their children.  Indeed, it appears HHS, on its own, had modified those procedures prior to the Court's July 10, 2018 Order.  (*See* Decl. of Jonathan White in Supp. of Notice of Compliance ¶ 13, ECF No. 86-1)  ("HHS has modified and expedited its ordinary process so that it can determine class membership using the Court's criteria and, to the extent possible, reunify class members and their children within the Court's deadlines.")  The Court's July 10, 2018 Order allowed for further modification of those procedures to ensure the safe reunification of Class Members and their children by the court-imposed deadline, but it did not go as far as HHS has apparently taken it.

For instance, and despite Defendants' joint statement that reunification had occurred after "careful vetting procedures[,]" Press Release, U.S. Department of Homeland Security, Trump Administration Completes Reunification for Eligible Children Under Age 5 (July 12, 2018), Mr. Meekins states HHS has "suspended further efforts to affirmatively verify the parentage of putative class members with children under 5." (Meekins Decl. ¶ 6.)  He also states "HHS has stopped DNA testing of putative class members notwithstanding the value of DNA testing as an objective tool for verifying biological parentage." (*Id.* ¶ 30.)  Both of these statements are categorically inconsistent with the Court's oral and written rulings, which explicitly require Defendants to make parentage determinations prior to reunification, and to use DNA testing, if necessary, to make those determinations.  Other statements in Mr. Meekins's Declaration are also categorically inconsistent with this Court's rulings requiring Defendants to make determinations about parental fitness and

18cv0428 DMS (MDD)

danger to the child prior to reunification.  Unfortunately, HHS appears to be operating in a vacuum, entirely divorced from the undisputed circumstances of this case:  family separation by Defendants, this Court's order finding a likelihood of success on Plaintiffs' due process claim, the President of the United States declaring the Government is in favor of maintaining family unity, and the joint statement of three Cabinet Secretaries that they are in full compliance with the Court's orders and are acting in good faith and will continue to do so.  Press Release, U.S. Department of Homeland Security, Trump Administration Completes Reunification for Eligible Children Under Age 5 (July 12, 2018).  Mr. Meekins's Declaration is entirely inconsistent with explicit pronouncements from the highest levels of the Government and this Court's orders.

To be clear, determinations of parentage, fitness and danger must be made before any Class Members are reunited with their children.  All of these determinations are incorporated in the class definition and the preliminary injunction, and until Mr. Meekins's Declaration was filed, it appeared the parties were in agreement that these determinations were necessary prior to any reunifications of Class Members and their children.  Mr. Meekins's Declaration casts doubt on what the Court believed was a mutual understanding, and calls into question the Court's previous statements that Defendants are acting in good faith in their attempts to reunify Class Members by the currently imposed deadlines.

As the Court stated in the 5:30 p.m. telephonic status conference with counsel held after the submission of Mr. Meekins's Declaration—safe and timely reunification of Class Members and their children can, and will, be done by the Court's deadline.  There is no reason why one of these goals must be sacrificed for the other given the vast amount of resources available to the federal government.  The task is laborious, but can be accomplished in the time and manner prescribed.  Defendants were substantially compliant with reunifying parents with children under age five, and the Court fully expects Defendants will be compliant with reunifying Class Members and their minor children age five and over, notwithstanding Mr. Meekins's Declaration.

/ / /

4

Accordingly, IT IS HEREBY ORDERED:

1.      The parties shall continue to meet and confer on the possibility of reunification for (1) the parents of children under age 5 that Defendants excluded from the Class and (2) Class Members who are not currently eligible for reunification with their children under age 5.

2.      On or before **July 13, 2018**, Defendants shall provide to Plaintiffs and the Court a list of all Class Members currently in ICE custody, and a list of all children in ORR custody currently subject to reunification with Class Members.

3.      On or before **9:00 a.m.** on **July 16, 2018**, Defendants shall provide to Plaintiffs and the Court the names, A-file numbers and locations of all Class Members and children on the July 13, 2018 lists, and for the children, Defendants shall also provide the age of each child.

4.      Absent a showing of good cause, Defendants shall complete their parentage determinations for Class Members in ICE custody, to include DNA testing, if necessary, on or before **July 19, 2018**.  Defendant shall also provide to Plaintiffs and the Court a list of parents in ICE custody who are ineligible for reunification.

5.      For all reunifications that occur pursuant to the Court's order, Defendants shall provide Plaintiffs with 12 hours notice of each reunification.

6.      A further status conference will be held on **July 16, 2018**, **at 9:30 a.m.**  As discussed during the evening status conference on **July 13, 2018**, Defendants shall have a representative from HHS personally appear at this conference.

7.      The parties shall submit a further status report on or before **3:00 p.m.** on **July 19, 2018**.  A further status conference shall be held on **July 20, 2018**, at **1:30 p.m.**

8.      The parties shall submit a further status report on or before **3:00 p.m.** on **July 23, 2018**, and further status conference shall be held on **July 24, 2018**, at **4:00 p.m.**

9.      The parties shall submit a final status report on or before **3:00 p.m.** on **July 26, 2018**, and a further status conference shall be held on **July 27, 2018**, at **1:30 p.m.**

18cv0428 DMS (MDD)

1    10.    The dial in number for counsel and any members of the news media that wish to
2    attend the July 16, 2018 status conference is as follows:

3        1.    Dial the toll free number: **877-873-8018**;

4        2.    Enter the Access Code: **9911153** (Participants will be put on hold until the
5              Court activates the conference call);

6        3.    Enter the Participant Security Code **07160428** and Press # (The security code
7              will be confirmed);

8        4.    Once the Security Code is confirmed, participants will be prompted to Press
9              1 to join the conference or Press 2 to re-enter the Security Code.

10   Members of the general public may appear in person.

11        **IT IS SO ORDERED**.

12    Dated:  July 13, 2018

13

14                                          Hon. Dana M. Sabraw
                                            United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT 2

CHAD A. READLER
Acting Assistant Attorney General
SCOTT G. STEWART
Deputy Assistant Attorney General
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
U.S. Department of Justice
WILLIAM C. SILVIS
Assistant Director
Office of Immigration Litigation
SARAH B. FABIAN
Senior Litigation Counsel
NICOLE MURLEY
Trial Attorney
Office of Immigration Litigation
U.S. Department of Justice
Box 868, Ben Franklin Station
Washington, DC 20442
Telephone: (202) 532-4824
Fax: (202) 616-8962

ADAM L. BRAVERMAN
United States Attorney
SAMUEL W. BETTWY
Assistant U.S. Attorney
California Bar No. 94918
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
619-546-7125
619-546-7751 (fax)

*Attorneys for Federal Respondents-Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MS. L, et al.,

               Petitioners-Plaintiffs,

     vs.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT, et al.,

               Respondents-Defendants.

Case No. 18cv428 DMS MDD

**NOTICE**

       Defendants hereby submit this notice in response to the Court's order of July 13, 2018, including its modifications to the June 26, 2018, order. Defendants are devoting extraordinary resources to comply fully with this Court's orders, and to do so in good faith. Through this extraordinary effort, HHS was able to substantially comply with this Court's July 12, 2018, deadline with respect to children aged four and under. See July 13 Order at 4. HHS is also committed to meeting the Court's July 26, 2018, deadline for the children who are aged five and over. In response to the Court's concerns, set forth below is a clarification of some points of potential confusion about how the reunification plan works. A plan document itself ("Plan") is attached. Under the reunification plan, and consistent with the Court's orders, Defendants will not reunify a child without first making "determinations of parentage, fitness and danger." *Id.*

       In particular, under the plan, the Department of Health and Human Services (HHS) makes determinations of parentage based on information that goes beyond

what U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) would typically have available to them. First, unlike a typical alien child in HHS custody who arrives alone, here there is preexisting evidence of parentage: The adult arrived at the border and presented as a family, with the child; the putative parent said they were a family; and CBP treated them as a family unit. See Meekins Dec. ¶ 45.

Second, the children have now been in the care of HHS Office of Refugee Resettlement (ORR) for several weeks. While CBP and ICE are tasked with enforcing the immigration laws, 8 U.S.C. 1103(a); 6 U.S.C. 211(c)(8), 251, ORR's mission is to protect children, including unaccompanied alien children in its care, 6 U.S.C. 279(b); 8 U.S.C. 1232(c)(1). The personnel at ORR shelters have had many opportunities, over a considerable span of time, to interact with the children and make notes in their files, including of risks of smuggling or abuse. See Meekins Dec. ¶ 36.

Third, by definition, this cohort of children is older (aged 5 and over), and thus can communicate. A child thus could potentially tell ORR staff, for example, that the adult who they arrived with is not their parent but an adult they were bundled or trafficked with, without the adult standing right there. Finally, the file may also include documentation voluntarily provided by the adult or plaintiff's counsel. See Meekins Dec. ¶ 36.

18cv428 DMS MDD

Under the plan, HHS reviews the files for each child—including all the information mentioned above—before proceeding with reunification. See Plan at 2; Meekins Dec. ¶ 36. HHS believes that in the large majority of cases, there will be no such indicia of trafficking in the records, and the constellation of evidence above will support the adult's assertion of parentage. See Plan at 2; Meekins Dec. ¶¶ 36-37. If so, HHS will determine that the adult is a parent, thus proceeding with the swift reunification plan. *Id*. Finally, HHS also conducts a final 15-minute interview of the parent at the ICE facility, which can provide further confirmation of that determination. See Plan at 3; Meekins Dec. ¶ 35. Absent a red flag, HHS will then transfer the child to ICE custody, completing the reunification. *Id*. But if the interview raises a red flag (or if a red flag caused HHS not to proceed to the interview in the first place) then, consistent with the order, reunification will not be completed and instead HHS undertakes additional scrutiny. See Plan at 2-3; Meekins Dec. ¶ 37. HHS thus will reunify families if and only if HHS has made a determination of parentage. See Plan at 1; Meekins Dec. ¶ 42.

This plan does not include, however, "affirmative verif[ication]" of parentage for each adult in the manner HHS does in its ordinary operations under the TVPRA. Meekins Decl. ¶ 39. Affirmative verification is different from the determination described above. In its ordinary operations, HHS affirmatively verifies parentage using documentary evidence (*e.g.*, birth certificates), which are typically obtained

through consular channels. *Id.* ¶ 46. That process can take months, and thus much too long to comply with the Court's reunification deadline. *Id.* HHS may also use DNA testing to affirmatively verify that an adult is a biological parent, as it did with the four-and-under cohort. See *id.* ¶ 23. (A negative DNA test, however, does not conclusively disprove legal parentage, but instead triggers further inquiry.) HHS views those processes as allowing for conclusive verification that an adult is a parent, without relying on other evidence, at the highest degree of accuracy. See *id.* ¶¶ 44-48**.** But DNA testing of all or virtually all the remaining parents and children here would be inconsistent with the Court's orders, see July 10 Order at 3, and HHS estimates it would "stretch the time required to comply by months," Meekins Dec. ¶ 31. HHS thus has instead determined that it need not perform DNA testing when it can make a determination of parentage based on the significant information described above. See Plan at 1-3.

As Defendants have explained in prior filings, there is an unavoidable difference between the accuracy of using HHS's ordinary processes for affirmatively verifying parentage in the absence of other information for every adult, and the accuracy of determining that an adult is a parent based on the information available via this process. See Meekins Dec. ¶¶ 43-48. Those concerns remain, as do risks associated with that difference. See *id.* But Defendants have been striving to comply with the Court's orders in good faith, and the plan indeed requires HHS to make a

1  determination of parentage, based on the information available to it, before

2  reunifying families within the deadlines.

3      This Court's order of July 13, 2018, imposes two new requirements, however:

4  (1) that, absent a showing of good cause, Defendants shall complete the

5  determination of parentage by a new, earlier deadline (July 19, 2018), to include

6

7  DNA testing, if necessary; and (2) that Defendants shall provide Plaintiffs with 12

8  hours' notice of each reunification.   July 13 Order at 5.  In response to that order,

9  Defendants have already added to the plan the use of DNA testing as a method for

10  resolving red flags about parentage.  See Plan at 3.  Defendants are currently

11

12  considering what additional modifications they need to make to the plan to comply

13  with the Court's new requirements, as well as its prior deadlines and orders, and

14  whether Defendants will seek further clarification or partial relief.  We will also seek

15  guidance from the Court to ensure that the current plan is consistent with the Court's

16  orders.

17

18

19

20

21

22

23

24

25

26

27

28

18cv428 DMS MDD

DATED: July 15, 2018                    Respectfully submitted,

                                        CHAD A. READLER
                                        Acting Assistant Attorney General
                                        SCOTT G. STEWART
                                        Deputy Assistant Attorney General
                                        WILLIAM C. PEACHEY
                                        Director
                                        WILLIAM C. SILVIS
                                        Assistant Director

                                        */s/ Sarah B. Fabian*
                                        SARAH B. FABIAN
                                        Senior Litigation Counsel
                                        NICOLE MURLEY
                                        Trial Attorney
                                        Office of Immigration Litigation
                                        Civil Division
                                        U.S. Department of Justice
                                        P.O. Box 868, Ben Franklin Station
                                        Washington, DC 20044
                                        (202) 532-4824
                                        (202) 616-8962 (facsimile)
                                        sarah.b.fabian@usdoj.gov

                                        ADAM L. BRAVERMAN
                                        United States Attorney
                                        SAMUEL W. BETTWY
                                        Assistant U.S. Attorney

                                        *Attorneys for Respondents-Defendants*

# EXHIBIT 3

# HHS/DHS UNIFIED PLAN OF OPERATIONS

## FOR REUNIFICATION OF 5-17 YEAR OLD POPULATION TO INCLUDE FLOW CHART AND SUMMARY OF REQUIRED STEPS

## 14 JULY 2018

### OPERATIONAL SCOPE:

1. Swift reunification of adults and children from age group 5-17 subsequent to separation, after determination of parentage, fitness, and danger.

2. There will be a total of eight ICE locations that will operate for as long as necessary to effect efficient reunification of children with parents.  There will be a population of no more than 50 (estimated) children that will require transport to locations outside of the three ICE AORs for individual reunification.  This will be coordinated with the HHS IMT and the ICE LNOs on site at HHS.

### LOGISTICS AND POTENTIAL LIMITING FACTORS:

1. Strict coordination and adherence to agreed upon planning and operational factors by all involved.

2. The requirement for HHS to transfer and ICE to receive high volumes of children at pre-designated sites.  EXTENDED HOURS OF OPERATIONS OR 24/7 OPERATIONAL PERIODS MAY BE REQUIRED, AS INDICATED.

3. ICE will incur all costs for the transportation of the adult population and HHS will incur the cost of moving the child (to pre-designated location). ICE will transport the reunited families, adults and minors as necessary, following reunification.

## HHS/DHS UNIFIED PLAN OF OPERATIONS

### FOR REUNIFICATION OF 5-17 YEAR OLD POPULATION TO INCLUDE FLOW CHART AND SUMMARY OF REQUIRED STEPS

### 14 JULY 2018 (Page 2)

**OPERATIONAL REQUIREMENTS AND PLANNING EFFORTS**:

A. **ICE will provide NCIC background information. ORR to review and assess for criminal concerns.  ICE will provide additional category of "convicted" vs. "charged" for the adult population identified with concerns from the NCIC review (step 1 in the process flow).  ICE will be responsive to all requests for additional information to expedite "clearance" or "removal" of adult from the certification list for reunification.**

B. *ORR to review case file to identify any pertinent "red flags",  eg: the child was not accompanied by a parent, was smuggled, or would otherwise be subject to safety/security concerns.  **Home studies are performed only in the following cases:***

   (1)   **a child who is a victim of a severe form of trafficking in persons;**

   (2)   **a special needs child with a disability;**

   (3)   **a child who has been a victim of physical or sexual abuse under circumstances that indicate that the child's health or welfare has been significantly harmed or threatened; or**

   (4)   **or a child whose proposed sponsor clearly presents a risk of abuse, maltreatment, exploitation, or trafficking to the child based on all available objective evidence.**

C. **If red flags, ORR will undertake further review and action as appropriate.  If ORR finds no red flags, proceed towards reunification on track below.**

D. **ORR will create and publish daily updated lists of "request to interview" (RTI) adults for reunification.**

E. **ICE Field Offices will review the A#'s submitted by ORR using EARM and flag if any adults have an executable Final Order.**

F. **ICE will notify HHS/ORR/SOC immediately if the adult elects to be removed without the child (and all supporting paperwork MUST be forwarded to HHS/ORR/SOC or be made immediately available through electronic links between HHS and ICE.**

G. **ICE to move selected adult population to identified sites for Field Team Interview (there will be a few isolated individuals outside of the three selected ICE AORs who are currently closer to their minor child in ORR care).**

## HHS/DHS UNIFIED PLAN OF OPERATIONS

### FOR REUNIFICATION OF 5-17 YEAR OLD POPULATION TO INCLUDE FLOW CHART AND SUMMARY OF REQUIRED STEPS

### 14 JULY 2018 (Page 3)

H. ICE will NOT transfer any pending adults for reunification outside or away from the three ICE AORs.  ICE will transfer all non-executable Final Orders and litigation pending cases (except PHO, ELP, SNA, to SNA AOR – *but will not do so, as stated above, if children are already in the same AOR as the adult.*

I. HHS contractor to perform intake of adult (15 min interview).

J. If HHS contractor finds red flags, undertake further review and action as appropriate.  If HHS contractor finds no red flags, complete reunification as below.

K. ICE will support HHS/ORR authorized personnel at reunification sites for parental screening procedures.

L. Contractor to notify IMT of "green" status of adult population (from list) and IMT to execute logistical plan for child to move to designated location within 06-48 hours of notification of final clearance.

M. ICE will conduct final check and confirm "greenlight" on reunification (with ORR).

N. Child is transported to designated location.

O. Paperwork exchange, transfer of responsibility between agencies and reunification occurs.

P. ICE to coordinate with MVM to dispatch reunited family to a pre-identified NGO release location. To request assistance through this program, email the MVM Command Center at **mvmcommandcenter@mvminc.com**.  Also copy Supervisory Detention and Deportation Officer Roberto R. Salazar, at **Roberto.R.Salazar@ice.dhs.gov**.  MVM may also be contacted via phone at (956) 621-7920

## PLEASE SEE FLOW CHART ON THE FOLLOWING PAGE

UAC Reunification Process
UAC Population 5-17 years old
NCIC Check/ICE A # Categorization of Conviction
Conducted Concurrently
Red Flags?
YES
A# & Name to ICE for determination of conviction
ICE Review of conviction w/determination of proceedings
NO
ORR Case Manager Review (Significant child safety concern or indications of non parentage)
Cleared by ICE?
NO
Red Flags?
YES
DNA Test for Adult and Child
DNA Match?
NO
NO
YES
ACLU & ICE receives request for interview (RFI) from HHS. ICE returns executable Final Order list allowing interviews
ORR performs statutory requirements and determination
ICE notifies ORR/SOC if parent elects to not be removed w/child and update list
Sponsorship Verification @ ICE Designated Locations Reunification Decision
YES
Cleared by ORR?
NO
Red Flags?
YES
Parent available?
NO
NO
YES
ICE identifies and hold adults w/children in same area of responsibility.
Parent desires reunification?
NO
YES
ORR Transfers Child to Target Detention Facility
NO
Did child become ill in ORR Care?
YES
Reunification within 24-48 Hours
YES
Illness resolved?
NO
Child remains in ORR Care for placement
ICE to Coord w/MVM to dispatch reunited family to pre-identified release location
Due Diligence Actions in the Interest of the Child

