# EXHIBIT 2

1 | CHAD A. READLER
Acting Assistant Attorney General
2 | SCOTT G. STEWART
3 | Deputy Assistant Attorney General
WILLIAM C. PEACHEY
4 | Director
5 | Office of Immigration Litigation
U.S. Department of Justice
6 | WILLIAM C. SILVIS
7 | Assistant Director
Office of Immigration Litigation
8 | SARAH B. FABIAN
9 | Senior Litigation Counsel
NICOLE MURLEY
10 | Trial Attorney
11 | Office of Immigration Litigation
U.S. Department of Justice
12 | Box 868, Ben Franklin Station
13 | Washington, DC 20442
Telephone: (202) 532-4824
14 | Fax: (202) 616-8962
15 |
16 | ADAM L. BRAVERMAN
United States Attorney
17 | SAMUEL W. BETTWY
18 | Assistant U.S. Attorney
California Bar No. 94918
19 | Office of the U.S. Attorney
20 | 880 Front Street, Room 6293
San Diego, CA 92101-8893
21 | 619-546-7125
22 | 619-546-7751 (fax)

23 | *Attorneys for Federal Respondents-Defendants*

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | SOUTHERN DISTRICT OF CALIFORNIA | |
| 3 | MS. L, et al., | Case No. 18cv428 DMS MDD |
| 4 | Petitioners-Plaintiffs, | **NOTICE** |
| 5 | vs. | |
| 6 | U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, et al., | |
| 7 | Respondents-Defendants. | |

Defendants hereby submit this notice in response to the Court's order of July 13, 2018, including its modifications to the June 26, 2018, order. Defendants are devoting extraordinary resources to comply fully with this Court's orders, and to do so in good faith. Through this extraordinary effort, HHS was able to substantially comply with this Court's July 12, 2018, deadline with respect to children aged four and under. See July 13 Order at 4. HHS is also committed to meeting the Court's July 26, 2018, deadline for the children who are aged five and over. In response to the Court's concerns, set forth below is a clarification of some points of potential confusion about how the reunification plan works. A plan document itself ("Plan") is attached. Under the reunification plan, and consistent with the Court's orders, Defendants will not reunify a child without first making "determinations of parentage, fitness and danger." *Id.*

In particular, under the plan, the Department of Health and Human Services (HHS) makes determinations of parentage based on information that goes beyond

what U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) would typically have available to them. First, unlike a typical alien child in HHS custody who arrives alone, here there is preexisting evidence of parentage: The adult arrived at the border and presented as a family, with the child; the putative parent said they were a family; and CBP treated them as a family unit. See Meekins Dec. ¶ 45.

Second, the children have now been in the care of HHS Office of Refugee Resettlement (ORR) for several weeks. While CBP and ICE are tasked with enforcing the immigration laws, 8 U.S.C. 1103(a); 6 U.S.C. 211(c)(8), 251, ORR's mission is to protect children, including unaccompanied alien children in its care, 6 U.S.C. 279(b); 8 U.S.C. 1232(c)(1). The personnel at ORR shelters have had many opportunities, over a considerable span of time, to interact with the children and make notes in their files, including of risks of smuggling or abuse. See Meekins Dec. ¶ 36.

Third, by definition, this cohort of children is older (aged 5 and over), and thus can communicate. A child thus could potentially tell ORR staff, for example, that the adult who they arrived with is not their parent but an adult they were bundled or trafficked with, without the adult standing right there. Finally, the file may also include documentation voluntarily provided by the adult or plaintiff's counsel. See Meekins Dec. ¶ 36.

Under the plan, HHS reviews the files for each child—including all the information mentioned above—before proceeding with reunification. See Plan at 2; Meekins Dec. ¶ 36. HHS believes that in the large majority of cases, there will be no such indicia of trafficking in the records, and the constellation of evidence above will support the adult's assertion of parentage. See Plan at 2; Meekins Dec. ¶¶ 36-37. If so, HHS will determine that the adult is a parent, thus proceeding with the swift reunification plan. *Id*. Finally, HHS also conducts a final 15-minute interview of the parent at the ICE facility, which can provide further confirmation of that determination. See Plan at 3; Meekins Dec. ¶ 35. Absent a red flag, HHS will then transfer the child to ICE custody, completing the reunification. *Id.* But if the interview raises a red flag (or if a red flag caused HHS not to proceed to the interview in the first place) then, consistent with the order, reunification will not be completed and instead HHS undertakes additional scrutiny. See Plan at 2-3; Meekins Dec. ¶ 37. HHS thus will reunify families if and only if HHS has made a determination of parentage. See Plan at 1; Meekins Dec. ¶ 42.

This plan does not include, however, "affirmative verif[ication]" of parentage for each adult in the manner HHS does in its ordinary operations under the TVPRA. Meekins Decl. ¶ 39. Affirmative verification is different from the determination described above. In its ordinary operations, HHS affirmatively verifies parentage using documentary evidence (*e.g.*, birth certificates), which are typically obtained

3                                                              18cv428 DMS MDD

through consular channels. *Id.* ¶ 46. That process can take months, and thus much too long to comply with the Court's reunification deadline. *Id.* HHS may also use DNA testing to affirmatively verify that an adult is a biological parent, as it did with the four-and-under cohort. See *id.* ¶ 23. (A negative DNA test, however, does not conclusively disprove legal parentage, but instead triggers further inquiry.) HHS views those processes as allowing for conclusive verification that an adult is a parent, without relying on other evidence, at the highest degree of accuracy. See *id.* ¶¶ 44-48. But DNA testing of all or virtually all the remaining parents and children here would be inconsistent with the Court's orders, see July 10 Order at 3, and HHS estimates it would "stretch the time required to comply by months," Meekins Dec. ¶ 31. HHS thus has instead determined that it need not perform DNA testing when it can make a determination of parentage based on the significant information described above. See Plan at 1-3.

As Defendants have explained in prior filings, there is an unavoidable difference between the accuracy of using HHS's ordinary processes for affirmatively verifying parentage in the absence of other information for every adult, and the accuracy of determining that an adult is a parent based on the information available via this process. See Meekins Dec. ¶¶ 43-48. Those concerns remain, as do risks associated with that difference. See *id.* But Defendants have been striving to comply with the Court's orders in good faith, and the plan indeed requires HHS to make a

determination of parentage, based on the information available to it, before reunifying families within the deadlines.

This Court's order of July 13, 2018, imposes two new requirements, however: (1) that, absent a showing of good cause, Defendants shall complete the determination of parentage by a new, earlier deadline (July 19, 2018), to include DNA testing, if necessary; and (2) that Defendants shall provide Plaintiffs with 12 hours' notice of each reunification. July 13 Order at 5. In response to that order, Defendants have already added to the plan the use of DNA testing as a method for resolving red flags about parentage. See Plan at 3. Defendants are currently considering what additional modifications they need to make to the plan to comply with the Court's new requirements, as well as its prior deadlines and orders, and whether Defendants will seek further clarification or partial relief. We will also seek guidance from the Court to ensure that the current plan is consistent with the Court's orders.

| | | |
|---|---|---|
| 1 | DATED: July 15, 2018 | Respectfully submitted, |
| 2 | | |
| 3 | | CHAD A. READLER<br>Acting Assistant Attorney General |
| 4 | | SCOTT G. STEWART<br>Deputy Assistant Attorney General |
| 5 | | WILLIAM C. PEACHEY<br>Director |
| 6 | | WILLIAM C. SILVIS |
| 7 | | Assistant Director |
| 8 | | */s/ Sarah B. Fabian* |
| 9 | | SARAH B. FABIAN<br>Senior Litigation Counsel |
| 10 | | NICOLE MURLEY |
| 11 | | Trial Attorney<br>Office of Immigration Litigation |
| 12 | | Civil Division |
| 13 | | U.S. Department of Justice<br>P.O. Box 868, Ben Franklin Station |
| 14 | | Washington, DC 20044 |
| 15 | | (202) 532-4824<br>(202) 616-8962 (facsimile) |
| 16 | | sarah.b.fabian@usdoj.gov |
| 17 | | |
| 18 | | ADAM L. BRAVERMAN<br>United States Attorney |
| 19 | | SAMUEL W. BETTWY |
| 20 | | Assistant U.S. Attorney |
| 21 | | *Attorneys for Respondents-Defendants* |