UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
M.G.U., et al.,               )
                              )
        Plaintiffs,           )
                              )
    v.                        )        Civil Action No. 18-1458 (PLF)
                              )
KIRSTJEN NIELSEN, et al.,     )
                              )
        Defendants.           )
_____)

OPINION

The matter is before the Court on plaintiffs' motion for a preliminary injunction

[Dkt. No. 13], requiring the United States government to immediately reunify plaintiff E.F. with

her nine-year-old son, from whom she was forcibly separated shortly after crossing the United

States-Mexico border over two months ago. Upon careful consideration of the parties' filings,

the relevant legal authorities, the arguments of counsel at a hearing on July 12, 2018, and the

entire record in this case, the Court granted plaintiffs' motion by separate Order earlier today.

This Opinion explains the reasons for that Order.[1]

_____

[1]      The Court has reviewed the following documents and accompanying exhibits in
connection with the pending motion: Complaint ("Compl.") [Dkt. No. 1]; Plaintiffs' Application
for a Temporary Restraining Order ("TRO App.") [Dkt. No. 8]; Plaintiffs' Errata to TRO
Application [Dkt. No. 12]; Plaintiffs' Motion for a Preliminary Injunction ("Mot.") [Dkt. No.
13]; Defendants' Opposition to TRO Application ("TRO Opp'n") [Dkt. No. 16]; Plaintiffs'
Emergency Motion for Expedited Discovery [Dkt. No. 25]; July 5, 2018 Joint Status Report
[Dkt. No. 26]; Defendants' Opposition to Preliminary Injunction Motion ("Opp'n") [Dkt. No.
27]; Defendants' Opposition to Expedited Discovery Motion [Dkt. No. 28]; Plaintiffs' Reply to
Expedited Discovery Motion [Dkt. No. 29]; July 9, 2018 Memorandum Opinion and Order
("July 9, 2018 Mem. Op. & Order") [Dkt. No. 30]; Plaintiffs' Reply to Preliminary Injunction
Motion ("Reply") [Dkt. No. 31]; Plaintiffs' First Notice of Supplementary Evidence ("Pl. First
Suppl.") [Dkt. No. 36]; Plaintiffs' Notice Regarding Damus v. Nielsen [Dkt. No. 37]; Plaintiffs'
Second Notice of Supplementary Evidence ("Pl. Second Suppl.") [Dkt. No. 38]; Defendants'

# I.  BACKGROUND

## A.  *Factual History*

On April 6, 2018, the Attorney General of the United States announced a "zero-tolerance" immigration policy, under which all immigrant parents unlawfully crossing the United States-Mexico border with their young children would be subject to criminal prosecution and separated from their children.  See Compl. Exs. 3 and 4.  Following widespread criticism over the separation of immigrant families, on June 20, 2018, the President of the United States signed an Executive Order requiring immigrant parents and their children who are apprehended at the border to remain together during the pendency of their criminal or immigration proceedings, to the extent permitted by law.  See Mot. Ex. 1 at Section 3.  The Executive Order did not, however, address the reunification of the more than 2,000 children whom the government had already separated from their parents.

Plaintiffs in this action are three immigrant parents who were separated from their young children after crossing the United States-Mexico border prior to the issuance of the Executive Order on June 20, 2018.  Subsequent to the filing of this lawsuit, two of the plaintiffs, M.G.U. and A.P.F., were recently reunified with their children after spending many weeks apart. The one remaining plaintiff, E.F., is presently detained in Texas, while her nine-year-old son is detained in New York.  Ms. E.F. is being held solely as a civil immigration detainee and not in association with any criminal charge or conviction.  There is no evidence suggesting that Ms.

---

July 13, 2018 Status Report [Dkt. No. 39]; Plaintiffs' July 13, 2018 Status Report [Dkt. No. 40]; Plaintiffs' July 13, 2018 Supplemental Status Report ("July 13, 2018 Suppl. Report") [Dkt. No. 41]; July 16, 2018 Memorandum Opinion and Order Regarding TRO Application ("July 16, 2018 Mem. Op. & Order Regarding TRO") [Dkt. No. 42]; Defendants' Notice of Additional Filings [Dkt. No. 43]; July 16, 2018 Memorandum Opinion and Order Regarding Removal ("July 16, 2018 Mem. Op. & Order Regarding Removal") [Dkt. No. 44]; July 17, 2018 Status Report [Dkt. No. 45]; and July 18, 2018 Order Regarding Preliminary Injunction [Dkt. No. 46].

E.F. is not the biological mother of her son.  Nor is there any suggestion that she is an unfit

parent or poses a danger to her son.

Plaintiff E.F. and her son fled threats of violence in Guatemala to pursue asylum

in the United States.  See Compl. ¶¶ 78, 81.  On May 14, 2018, they entered the United States

near Presidio, Texas and presented themselves to immigration officials in order to seek asylum.

See id. ¶ 81.  They were arrested.  See id.  Although they were initially detained together, they

were forcibly separated the next day, on May 15, 2018.  See id. ¶ 82.  Unbeknownst to Ms. E.F.,

her son was deemed an "unaccompanied minor" because he had "no parent or legal guardian in

the United States . . . available to provide care and physical custody."  Opp'n at 6-7.  As a result,

he was transferred to the custody of the Office of Refugee Resettlement ("ORR") and detained in

a separate facility.  See id.[2]

Three weeks later on June 6, 2018, Ms. E.F. was convicted at trial of

misdemeanor improper entry under 8 U.S.C. § 1325(a) and sentenced to time served.  See

Compl. ¶¶ 85-86.  She was then transferred to immigration detention for removal proceedings

and consideration of her asylum application.  See Opp'n at 6-7.  An immigration officer later

made a negative credible fear determination, which an immigration judge affirmed.  See July 13,

2018 Status Report.  Based on that determination, Ms. E.F.'s asylum application was denied and

---

[2]        The Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No.
110-457 (Dec. 23, 2008), provides that "the care and custody of all unaccompanied alien
children, including responsibility for their detention, where appropriate, shall be the
responsibility of" the Department of Health and Human Services, and its sub-agency, ORR.  See
8 U.S.C. § 1232(b)(1).  An "unaccompanied alien child" is a child under eighteen years of age
with no lawful immigration status in the United States who has neither a parent or legal guardian
in the United States, nor a parent or legal guardian in the United States "available to provide care
and physical custody."  See 6 U.S.C § 279(g)(2).  Plaintiffs' children, however, are not true
unaccompanied minors within the meaning of the statute; they were rendered unaccompanied by
the unilateral and likely unconstitutional actions of defendants.  See Order, Ms. L. v. U.S.
Immigration and Customs Enf't, No. 18-0428, ECF No. 101, at 2-3 (S.D. Cal. July 10, 2018); see
also D.B. v. Cardall, 826 F.3d 721, 744-50 (4th Cir. 2016) (Floyd, J., dissenting).

she is now subject to a final order of removal.  See id.  Ms. E.F. is currently detained in El Paso,

Texas and is awaiting removal.  See id.; July 13, 2018 Suppl. Report Ex. 1, Decl. of Ashley N.

Martinez at ¶ 2.

Ms. E.F. has not seen her nine-year-old son since May 15, 2018.  See Mot. at 2.

More than a month after their initial separation, she first learned that her son is in a foster care

facility in New York.  See TRO Opp'n Ex. 1.  She has spoken to her son only a few times over

the phone for about five minutes each time.  See TRO App. Ex. 2, June 21, 2018 Decl. of E.F.

at ¶ 6.  Each time they have spoken, "he only cries."  See id. ¶ 8.  "[H]e only wants to know

when he will see me again so it's hard for him to focus on anything else."  See id. ¶ 7.  During

one conversation, he told his mother that he "had a nosebleed" but was "too scared to tell

anyone."  See id. ¶ 10.  Ms. E.F. recalls that "my son used to be such a happy child who was

always joking around with me.  Now he just seems depressed[.]"  See id. ¶ 9.  As she explains in

her declaration, "I am very worried about my son.  Since we were separated, I feel lonely and

desperate.  I have had trouble eating and sleeping [.]"  See Mot. Ex. 5, June 15, 2018 Decl. of

E.F. at ¶ 5.  She states that "I wake up from my sleep crying because I remember that he was

taken from me."  See TRO App. Ex. 2, June 21, 2018 Decl. of E.F. at ¶ 18.  She urges that "I

want to be reunited with my son[.]"  See Pl. First Suppl. Ex. 3, July 11, 2018 Decl. of E.F. at ¶ 2.

### B.  Procedural History

Plaintiffs brought suit on June 20, 2018 against certain federal agencies and

officials responsible for enforcing immigration laws and regulations.  See Compl. ¶¶ 5-19.  In the

complaint, Ms. E.F. alleges that her continued separation from her minor son, absent a showing

that she is an unfit parent or otherwise presents a danger to her son, violates her substantive due

process right to family integrity under the Fifth Amendment to the United States Constitution.
See id. ¶¶ 101-04.

On June 22, 2018, plaintiffs filed an application for a temporary restraining order requiring defendants, inter alia, to "immediately provide reliable, daily information" about the well-being of their children.  See TRO Mot. at 2.  After ordering expedited briefing, the Court held a hearing on the TRO application on June 27, 2018.  At the hearing, defendants represented that they had provided, or would soon provide, certain information that plaintiffs had requested. The Court therefore held the TRO application in abeyance and suggested that the parties meet and confer and provide a joint status report to the Court.  The parties provided that joint status report on July 5, 2018 and represented that they had resolved several issues pertaining to the TRO application, but that some matters were still outstanding.  On July 16, 2018, the Court granted plaintiffs' TRO application with respect to certain outstanding requests.  See July 16, 2018 Mem. Op. & Order Regarding TRO (ordering defendants to "facilitate daily telephone calls" between each plaintiff and his or her child; "facilitate at least one telephone call per week" between each plaintiff and the case manager for each plaintiff's child; and "provide the address for the home or facility" where Ms. E.F.'s child is currently detained).

On June 26, 2018, plaintiffs filed a motion for a preliminary injunction seeking immediate reunification with their children.  The Court set an expedited briefing schedule and held a hearing on July 12, 2018.  In anticipation of that hearing, plaintiffs filed an emergency motion for expedited discovery on July 3, 2018, which the Court granted in part on July 9, 2018. See July 9, 2018 Mem. Op. & Order (ordering defendants to provide, inter alia, information regarding plans to reunify plaintiffs and their children).  Following the hearing, the Court entered an order prohibiting defendants from removing Ms. E.F. from the United States prior to the

Court's decision on her preliminary injunction motion and until further order of the Court.  See July 16, 2018 Mem. Op. & Order Regarding Removal.

Meanwhile, on June 26, 2018, Judge Dana M. Sabraw of the United States District Court for the Southern District of California issued a class-wide preliminary injunction requiring the government to reunify children under the age of five with their parents by July 10, 2018, and those age five and over by July 26, 2018.  See Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, 2018 WL 3129486 at *11-12 (S.D. Cal. June 26, 2018).  The class is defined to include:  "All adult parents who enter the United States at or between designated ports of entry who (1) have been, are, or will be detained in immigration custody by the [Department of Homeland Security ("DHS")], and (2) have a minor child who is or will be separated from them by DHS and detained in ORR custody, ORR foster care, or DHS custody, absent a determination that the parent is unfit or presents a danger to the child."  Id. at *3 n.5.  The class does not include "parents with criminal history or communicable disease, or those apprehended in the interior of the country or subject to the [Executive Order]."  See id.

## II.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. NRDC, 555 U.S. 7, 24 (2008).  A party seeking preliminary relief must make a "clear showing that four factors, taken together, warrant relief:  likely success on the merits, likely irreparable harm in the absence of preliminary relief, a balance of the equities in its favor, and accord with the public interest."  League of Women Voters of the United States v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 505 (D.C. Cir. 2016)).  The moving party bears the burden of persuasion and must demonstrate, "by a clear showing," that the requested relief is warranted.  Hospitality Staffing Solutions, LLC v.

Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in Winter v. NRDC, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another.  Damus v. Nielsen, No. 18-00578, 2018 WL 3232515, at *4 (D.D.C. July 2, 2018) (quoting Davis v. PBGC, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009)). This Circuit has hinted, though not held, that Winter v. NRDC – which overturned the Ninth Circuit's "possibility of irreparable harm" standard – establishes that "likelihood of irreparable harm" and "likelihood of success" are "independent, free-standing requirement[s]."  Sherley v. Sebelius, 644 F.3d 388, 392-93 (D.C. Cir. 2011) (quoting Davis v. PBGC, 571 F.3d at 1296 (Kavanaugh, J., concurring)); see League of Women Voters of the United States v. Newby, 838 F.3d at 7 (declining to address whether "sliding scale" approach is valid after Winter v. NRDC). Also unresolved is the related question of "whether, in cases where the other three factors strongly favor issuing an injunction, a plaintiff need only raise a serious legal question on the merits."  Aamer v. Obama, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (internal quotation marks and citation omitted).  Regardless of the extent to which showings of irreparable harm and success on the merits can be diminished, however, it is clear that where the plaintiff can show neither harm nor likelihood of success, no relief is warranted.  See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs, 205 F. Supp. 3d 4, 26 (D.D.C. 2016).

## III.  DISCUSSION

Ms. E.F. seeks a preliminary injunction directing defendants to immediately reunify her with her son.  For the reasons that follow, the Court finds that the circumstances

presented here merit this extraordinary form of relief, and therefore has ordered defendants to reunify Ms. E.F. with her son on or before midnight on Friday, July 20, 2018.

## A. Threshold Matters

Before turning to the four preliminary injunction factors, the Court addresses three threshold matters.  First, defendants contend that the Court lacks jurisdiction to grant the requested relief because Ms. E.F. has not pled a waiver of sovereign immunity.  See Opp'n at 10.  Section 702 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, however, explicitly waives sovereign immunity for claims – even non-APA claims, such as the claims at issue here – brought directly under the Constitution.  See Trudeau v. FTC, 456 F.3d 178, 185-87 (D.C. Cir. 2006).

Second, defendants assert that neither Ms. E.F. nor her son is in custody within the jurisdiction of this Court.  Defendants argue that if Ms. E.F. had sought a writ of habeas corpus, the Court would lack jurisdiction to grant it.  See Opp'n at 11.  Ms. E.F., however, has not sought a writ of habeas corpus in this action.  And the Court has federal-question jurisdiction under 28 U.S.C. § 1331 based on her substantive due process claims.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  In addition, defendants contend that if Ms. E.F. had sought an order directing her release from detention on parole pending completion of her immigration proceedings, the Court would lack jurisdiction to grant it.  See Opp'n at 11-12; Damus v. Nielsen, 2018 WL 3232515, at *5 (permitting review of parole methodologies that do not require review of individual parole decisions).  But Ms. E.F. has not sought any such order.  Rather, she has sought immediate reunification with her son, which can be accomplished, for example, by temporarily detaining families together in family residential

facilities.  See Ms. L v. U.S. Immigration and Customs Enf't, 302 F. Supp. 3d 1149, 1159-60 (S.D. Cal. 2018).

Third, defendants suggest that the motion for a preliminary injunction is subject to a heightened standard, under which Ms. E.F. must "clearly" show that she is entitled to relief or that "extreme or very serious damage" will result from the denial of the injunction.  See Opp'n at 8 (quoting Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd., 15 F. Supp. 2d 1, 4 (D.D.C. 1997), aff'd, 159 F.3d 636 (D.C. Cir. 1998)).  It is true that some courts in this District have recognized that if the requested relief "would alter, not preserve, the status quo," the movant's claim is subject to a somewhat higher standard.  See, e.g., Aracely v. Nielsen, No. 17-1976, 2018 WL 3243977, at *5 (D.D.C. July 3, 2018) (internal quotation marks and citations omitted); Elec. Privacy Info. Ctr. v. Dep't of Justice, 15 F. Supp. 3d 32, 39 (D.D.C. 2014).  But the requested preliminary injunction would preserve, rather than alter, the status quo – that is, the "last uncontested status which preceded the pending controversy."  Consarc Corp. v. U.S. Treasury Dept. of Foreign Assets Control, 71 F.3d 909, 913 (D.C. Cir. 1995).  Given that Ms. E.F. has contested her separation from the moment that she was separated from her son, the last uncontested status occurred when she and her son approached immigration officials together near the United States-Mexico border.  In any event, even if a heightened standard were appropriate, Ms. E.F. satisfies the higher standard proposed by defendants for the reasons given below.

The Court now turns to the four preliminary injunction factors.

## B.  The Four Preliminary Injunction Factors

Upon careful review of the parties' submissions, and in particular, the declarations submitted by Ms. E.F. and several medical experts, the Court concludes that Ms.

E.F. easily meets her burden to show likely success on the merits and irreparable harm, and that the balance of equities and the public interest weigh in her favor, thus warranting issuance of a preliminary injunction.

## 1. Likelihood of Success on the Merits

While plaintiffs seeking a preliminary injunction have the burden of demonstrating likelihood of success on the merits, they are not required to prove their case in full at the preliminary injunction stage, but only such portions that enable them to obtain the injunctive relief that they seek.  See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).  At this preliminary stage, the Court easily concludes that Ms. E.F. is likely to succeed on her claim that her continued separation from her minor son, absent a determination that she is either an unfit parent or presents a danger to her son, violates her substantive due process rights under the Fifth Amendment.  See Ms. L. v. U.S. Immigration and Customs Enf't, 2018 WL 3129486, at *7-9; see also Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 10-15 (N.D. Ill. July 9, 2018).

The Fifth Amendment mandates that no person shall "be deprived of life, liberty, or property, without due process of the law."  U.S. CONST. amend. V.  Due process protects noncitizens who are on U.S. soil.  See Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  The due process guarantee has both procedural and substantive components.  Only the substantive component is at issue here. Substantive due process bars government interference with certain fundamental rights "regardless of the fairness of the procedures used to implement them."  Daniels v. Williams, 474 U.S. 327, 331 (1986).  There are "two strands of the substantive due process doctrine."  D.B. v.

Cardall, 826 F.3d at 740; see Barnes v. District of Columbia, 793 F. Supp. 2d 260, 276-78

(D.D.C. 2011); see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs., 640 F.3d

716, 728 n.6 (6th Cir. 2011); Seegmiller v. LaVerkin City, 528 F.3d 762, 769 (10th Cir. 2008);

United States v. Loy, 237 F.3d 251, 269-70 (3d Cir. 2001).  The first strand protects rights that

are "fundamental," whereas the second "protects against the exercise of governmental power that

shocks the conscience."  D.B. v. Cardall, 826 F.3d at 740; see Barnes v. District of Columbia,

793 F. Supp. 2d at 276-78.

        The Supreme Court has made clear that parents have a fundamental liberty

interest in family integrity, and in the care, custody, and control of their children.  See Troxel v.

Granville, 530 U.S. 57, 65-66 (2000) ("The liberty interest at issue in this case – the interest of

parents in the care, custody, and control of their children – is perhaps the oldest of the

fundamental liberty interests recognized by this Court."); Quilloin v. Walcott, 434 U.S. 246, 255

(1978) ("We have recognized on numerous occasions that the relationship between parent and

child is constitutionally protected."); Stanley v. Illinois, 405 U.S. 645, 651 (1972).  Ms. E.F.

contends that her continued separation from her son, absent a determination that she is either an

unfit parent or presents a danger to her son, impermissibly interferes with her fundamental right

to family integrity.  See Abigail Alliance for Better Access to Developmental Drugs v. von

Eschenbach, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (holding that a substantive due

process claim requires a "careful description" of the asserted fundamental liberty interest).

Framed in this manner, Ms. E.F. likely will show that defendants' actions implicate a

fundamental liberty interest that has been infringed.  See Ms. L. v. U.S. Immigration and

Customs Enf't, 2018 WL 3129486, at *7-9; Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 10-15.[3]

Defendants respond that "the extent of any right that parents may have based in a relationship with their children (or vice versa) necessarily depends on the circumstances of a particular case." Opp'n at 13.  According to defendants, because Ms. E.F. is in lawful immigration custody, she is "unavailable to provide care and physical custody" for purposes of the TVPRA, and therefore custody of her son must be transferred to ORR and he must be detained in a separate facility from his mother.  See id.  The Court disagrees.  See supra at 3 n.2. The fact that Ms. E.F. is lawfully detained in immigration custody does not eliminate her due process right to family integrity.  The statutes cited by defendants to separate Ms. E.F. from her son explicitly require defendants to "promptly [place unaccompanied alien children] in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  Rather than placing Ms. E.F.'s son in the least restrictive setting, defendants have continued to separate Ms. E.F. and her son in a manner that absolutely prevents her from providing care to, or exercising custody and control over, her son.  Ms. E.F. therefore has demonstrated that defendants' actions likely implicate her right to family integrity.

Substantial governmental burdens on family integrity are subject to strict scrutiny review, and they survive only if the burden is narrowly tailored to serve a compelling state interest.  See Goings v. Court Servs. & Offender Supervision Agency, 786 F. Supp. 2d 48, 70 (D.D.C. 2011) (granting preliminary injunction where plaintiff's substantive due process claim premised on no-contact order prohibiting communication with his children likely would not

---

[3]      To be clear, Ms. E.F. does not challenge her initial criminal detention pending prosecution for improper entry under 8 U.S.C. § 1325(a).  Rather, she challenges her continued separation from her son now that she has been transferred from criminal detention to civil immigration detention pending removal proceedings.

survive strict scrutiny review); <u>see also</u> <u>Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach</u>, 495 F.3d at 702 (holding that the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests . . . including the rights to . . . direct the education and upbringing of one's children" (internal quotation marks and citations omitted)); <u>Franz v. United States</u>, 707 F.2d 582, 602 (D.C. Cir. 1983) (severance of relationship between parent and his child will survive constitutional scrutiny only if:  (1) the government's interest is compelling; (2) there is a particularized showing of the government's interest in terminating the parental relationship; (3) it is impossible to accomplish that interest in a less restrictive way; and (4) the parties are afforded procedural due process protections); <u>U.S. v. Breeden</u>, No. 16-0008, 2016 WL 8943168, at *2 (D.D.C. June 3, 2016); <u>U.S. v. Godoy</u>, No. 10-0016, 2014 WL 12618708, at *5 (D.D.C. June 13, 2014).[4]

There is no question that defendants have directly and substantially burdened Ms. E.F.'s right to family integrity.  Defendants have continued to detain Ms. E.F. and her son in separate facilities for many weeks with only periodic phone calls.  <u>See</u> <u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 346 (4th Cir. 1994) ("The forced separation of parent from child, even for a short time, represents a serious impingement on [parental] rights.").  The separation imposed by defendants absolutely precludes Ms. E.F.'s involvement in any aspect of her son's care, custody, and control, from religion to education.  And the forced separation prevents her from

---

[4]    To the extent that Ms. E.F.'s claim is properly analyzed under the "shock the conscience" standard set forth in <u>City of Sacramento v. Lewis</u>, 523 U.S. 833, 847 n.8 (1998), defendants' actions also fail under that standard for the same reasons described by Judge Sabraw in the class action.  <u>See</u> <u>Ms. L. v. U.S. Immigration and Customs Enf't</u>, 2018 WL 3129486, at *7-9; <u>see also</u> Mem. Op. & Order, <u>W.S.R. v. Sessions</u>, No. 18-4265, at 10-15; <u>Barnes v. District of Columbia</u>, 793 F. Supp. 2d at 276-78.

expressing love for, and comfort to, her son – comfort that he surely needs as he endures the bewildering experience of detention.

While the need to protect children from unfit parents is a well-recognized compelling reason for burdening family integrity, defendants must make at least some showing of parental unfitness in order to establish such a compelling state interest.  See Quilloin v. Walcott, 434 U.S. at 255 ("We have little doubt that the Due Process Clause would be offended [i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest." (internal quotation marks and citation omitted)); United States v. Loy, 237 F.3d at 269-70.  Here, there is no evidence suggesting that Ms. E.F. is not the biological mother of her son.  Nor is there any suggestion that she is an unfit mother or poses a danger to her son.

Defendants contend that the separation occurred because plaintiffs were subject to lawful prosecution under 8 U.S.C. § 1325(a).  See Opp'n at 14.  They also argue that Ms. E.F. remains separated from her son because she is subject to mandatory detention pending removal proceedings.  Defendants do not dispute, however, that all criminal proceedings have concluded and that Ms. E.F. has served her accompanying sentence.  And defendants do not dispute that Ms. E.F.'s son has not been charged with any crime.  So there is no criminal law enforcement reason to maintain the separation of Ms. E.F. and her son.  Moreover, the fact that Ms. E.F. is subject to mandatory immigration detention does not explain why she must be detained separately from her son.  The same goal of mandatory detention can be accomplished, for example, by temporarily detaining families together in family residential facilities.  See Ms. L v. U.S. Immigration and Customs Enf't, 302 F. Supp. 3d at 1159-60.

While defendants have a legitimate interest in enforcing the immigration laws and deterring unlawful immigration, nothing in federal law suggests that deterring immigration by indefinitely separating families once the parents have been transferred to immigration custody is a compelling or legitimate government objective.  Moreover, defendants' forced separation policy is overbroad because it equally deters both lawful and unlawful conduct.  As Judge Boasberg recently put it in a related context:  "[The government] maintains that one particular individual may be civilly detained for the sake of sending a message of deterrence to other Central American individuals who may be considering immigration.  This appears to be out of line with analogous Supreme Court decisions."  R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 188-89 (D.D.C. 2015).  Indeed, the Executive Order names a less restrictive alternative:  temporarily detaining parents together with their children.  See Mot. Ex. 1 at Section 3(c).  The fact that immigration officials administered the same statutes and regulations through 2017 without routinely separating families lends further support to the conclusion that defendants' actions are not narrowly tailored.  The "zero-tolerance" immigration policy therefore is likely not the least restrictive means for furthering defendants' purported interest in enforcing the immigration laws.

For these reasons, the Court finds that Ms. E.F. likely will succeed on her substantive due process claim premised on her constitutional right to family integrity.

## 2.  Irreparable Harm

As to whether Ms. E.F. is likely to suffer irreparable harm in the absence of preliminary relief, there can be no dispute.  Ms. E.F. desperately wants to be reunited with her son.  See Pl. First Suppl. Ex. 3, July 11, 2018 Decl. of E.F. at ¶ 2.  Ms. E.F. has offered overwhelming evidence in her own words and from medical experts describing the grave and

lasting consequences of separating parents from their young children.  Defendants have not attempted to refute this evidence.  For good reason.

The record in this case demonstrates that Ms. E.F.'s separation from her son has been excruciating.  She has not seen her son in over two months.  See Mot. Ex. 5, June 15, 2018 Decl. of E.F. at ¶ 5.  In the few, fleeting telephone conversations she has been able to arrange with her son, "he only cries."  See TRO App. Ex. 2, June 21, 2018 Decl. of E.F. ¶ 8.  He once told her that he had a nosebleed, but was too scared to tell anyone.  See id. ¶ 10.  Amid her constant anguish, she has been unable to eat or sleep.  See id. ¶ 17.  Keeping Ms. E.F. separated from her son, in a facility where she has little or no direct access to basic information about her son's health or general well-being, plainly causes irreparable harm.  Her son is innocent of any wrongful conduct, and she is, at most, guilty of a petty misdemeanor.  See United States v. Dominguez-Portillo, No. 17-4409, 2018 WL 315759, at *8 n.14 (W.D. Tex. Jan. 5, 2018) (describing violations of 8 U.S.C. § 1325(a) as "quite literally one of the least serious federal offenses").

The panic and desperation that Ms. E.F. has endured will no doubt sound familiar to anyone who has ever, even momentarily, lost sight of a child entrusted to his or her care.  But counsel for plaintiffs have also offered evidence from medical experts describing the profound and long-term consequences that separation can have on a child's well-being, safety, and development.  According to the American Academy of Pediatrics, detained immigrant children may experience high rates of post-traumatic stress disorder, anxiety, and depression.  See Compl. Ex. 7, American Academy of Pediatrics Policy Statement at 8; see also Mot. Ex. 10, June 15, 2018 Decl. of Dr. Marsha R. Griffin at ¶ 9 ("There may be nothing more frightening for a vulnerable child than to be forcibly separated from their parent.  Even this short-term separation

will have lasting impact on their physical and emotional well-being.").  Children may also develop toxic stress, a form of extreme and repetitive stress that adversely affects brain development and is correlated with an increased risk of developing chronic mental health problems, as well as behavioral problems.  See, e.g., Mot. Ex. 11, June 15, 2018 Decl. of Ms. Julie M. Linton at ¶ 4; Mot. Ex. 12, June 18, 2018 Decl. of Dr. Alan Shapiro at ¶ 14. Furthermore, the harm that develops during detention "does not necessarily resolve once the detainee is freed," as children may experience "developmental delay and poor psychological adjustment, potentially affecting functioning in school and socially."  TRO App. Ex. 5, June 21, 2018 Decl. of Dr. Lisa R. Fortuna at ¶¶ 12-14.

As for parents, detained adult asylum seekers may develop musculoskeletal, gastrointestinal, respiratory, and neurologic symptoms.  See Compl. Ex. 7, Policy Statement of American Academy of Pediatricians at 8.  Being detained without information can also induce "profound hopelessness, despair, depression and even suicidal urges."  TRO App. Ex. 5, June 21, 2018 Decl. of Dr. Lisa R. Fortuna at ¶ 12.  Aside from these mental and physical symptoms, parents often face difficulty parenting their children after a period of forced separation.  See Mot. Ex. 10, June 15, 2018 Decl. of Dr. Marsha R. Griffin at ¶ 10 ("Separation of children from their parents threatens the parent-child relationship, especially if the child believes that the parent should have been capable of preventing the separation and thus any imagined or real subsequent injury.").[5]

---

[5]     Not only does forced family separation cause severe emotional harm, but it also forces parents and children to make critical legal decisions in isolation from one another.  See Mot. Ex. 7, June 25, 2018 Decl. of Chris Carlin at ¶ 10; United States v. Dominguez-Portillo, 2018 WL 315759, at *1-2 (explaining that defendants "had not received any paperwork or information concerning the whereabouts or well-being of" their children).

Separation irreparably harms Ms. E.F. and her son every minute it persists.  This evidence, combined with the constitutional violation alleged, shows that Ms. E.F. is not only likely – but certain – to suffer irreparable injury if the requested preliminary injunction does not issue.

### 3.   The Balance of Equities

In considering whether to grant a preliminary injunction, the Court must "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." Texas Children's Hosp. v. Burwell, 76 F. Supp. 3d 224, 245 (D.D.C. 2014) (internal quotation marks and citations omitted).  Where an injunction will "not substantially injure other interested parties," the balance of equities tips in the movant's favor.  League of Women Voters of the United States v. Newby, 838 F.3d at 12 (citation omitted).  Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." Open Communities Alliance v. Carson, 286 F. Supp. 3d 148, 179 (D.D.C. 2017).

As discussed, the harm to Ms. E.F. and her son is obvious and intense.  Every additional day of separation causes irreparable harm.  Lack of information is but one necessary consequence of separation.  Another consequence of separation is lasting damage to the child's well-being and his relationship with his mother.  And the loss of constitutional freedoms, "for even minimal periods of time, unquestionably constitutes irreparable injury." Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.D.C. 2009) (citation omitted).

Defendants contend that affording the relief sought by Ms. E.F. in this action – immediate reunification – would interfere with their ongoing efforts to reunify all class members with their children by July 26, 2018, as required by the preliminary injunction issued in the class action pending before Judge Sabraw. See Opp'n at 8-10, 14.  They contend that they

are devoting significant resources to facilitating compliance for all class members, including Ms.

E.F.  A conflicting order from this Court, defendants argue, may impact these compliance

efforts.

   While defendants have recently advised Judge Sabraw that they are committed to

reuniting all of the separated children with their parents by July 26, 2018, see Ms. L. v. U.S.

Immigration and Customs Enf't, No. 18-0428, ECF No. 109, at 1 (S.D. Cal. July 15, 2018),

defendants previously have asked for partial relief from the timelines set in the class action.  The

July 26, 2018 deadline for reunification, therefore, is not guaranteed.  Moreover, to the extent

that defendants' concern stems from limited resources, defendants fail to make any effort to

explain how an order requiring reunification of one parent with her son will hinder their

compliance with the class-wide preliminary injunction.  Defendants are free to commit more

resources to their reunification efforts to compensate for any additional burden required to

reunify one parent with her son, particularly where these family separations were the result of

defendants' own decision to adopt a zero-tolerance policy for immigrant families without

specifying any basic procedure or plan to facilitate subsequent reunification.  Given the gravity

of the harm at issue, the need to expend resources cannot outweigh these threats to constitutional

rights.  The harm to defendants is self-inflicted:  defendants embarked on a zero-tolerance policy,

bringing misdemeanor charges and separating thousands of children from their parents, without a

plan for reunification after the short, time-served sentences for improper entry into the United

States.

   The Court recognizes that all of the children of class members are suffering

irreparable harm.  But the record evidence compiled in this case demonstrates that prompt

reunification of Ms. E.F. with her son will not significantly interfere with defendants' efforts to

comply with the class action order. The fact is that Ms. E.F. has met her burden to show that every day of separation is causing serious and potentially permanent harm. The balance of equities therefore favors accelerated reunification of Ms. E.F. with her son.

### 4. The Public Interest

The final factor for consideration is the public interest. The public's interest in enforcing the criminal and immigration laws of this country would be unaffected by issuance of the requested preliminary injunction. The Executive Branch remains free to prosecute those who unlawfully enter the United States and institute removal proceedings against them. But the public also has an interest in ensuring that its government respects the rights of immigrants to family integrity while their removal proceedings are pending. See League of Women Voters of the United States v. Newby, 838 F.3d at 12 (holding that there is a substantial public interest "in having governmental agencies abide by the federal laws that govern their existence and operations"). The public interest in upholding and protecting such rights in the circumstances presented here is served by issuing the requested injunction.

### C. Removal of Plaintiffs from the United States

Defendants have acknowledged that several immigrant parents have been removed from the United States without their children. See Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, ECF No. 104, at 5-6 (S.D. Cal. July 12, 2018) (confirming that twelve parents have been removed without their children thus far). In view of that reality, Judge Sabraw has issued a temporary restraining order prohibiting the government from removing any parents without their children upon or after reunification until further order of that court. See Ms. L. v. U.S. Immigration and Customs Enf't, No. 18-0428, ECF No. 116 (S.D. Cal. July 16,

2018); see also Mem. Op. & Order, W.S.R. v. Sessions, No. 18-4265, at 30.  Consistent with that

order, defendants are prohibited from removing plaintiffs E.F., M.G.U., or A.P.F from the United

States until further order of this Court.

## IV.  CONCLUSION

By Order issued earlier today, the Court granted plaintiff E.F.'s motion for a

preliminary injunction.  Defendants must reunify Ms. E.F. with her son and must do so on or

before midnight on Friday, July 20, 2018.  Defendants are prohibited from removing plaintiffs

E.F., M.G.U., or A.P.F from the United States until further order of this Court.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 18, 2018